### BANK OF NEW YORK v. UNITED STATES.
### No. 9611.

United States Court of Appeals
Third Circuit.

Argued May 7, 1948.
Decided Aug. 24, 1948.

Sydney A. Gutkin, of Newark, N. J. (Alfred J. Grosso, of Orange, N. J., on the brief), for appellant.

Leland T. Atherton, of Washington, D. C. (Theron Lamar Caudle, Asst. Atty. Gen., Sewall Key, and A. F. Prescott, Sp. Assts. to Atty. Gen., and Edgar H. Rossbach, U. S. Atty., and Roger M. Yancey, Asst. U. S. Atty., both of Newark, N. J., on the brief), for appellee.

Before McLAUGHLIN and O'CONNELL, Circuit Judges, and LEAHY, District Judge.

McLAUGHLIN, Circuit Judge.

This is an appeal from a judgment of the District Court in an action for the recovery of alleged overpayment of estate taxes. The case was tried below without a jury on the complaint, answer, amended answer and stipulation of facts, in accordance with an order allowing a separate trial of the government's affirmative defense that the taxpayer is estopped to maintain the suit. This was the only issue before the court.

The decedent, Edward R. Nichols, died September 30, 1935, a resident of Essex County, New Jersey. His will was duly probated with appellant named as executor and qualifying as such. On December 18, 1936, appellant reported a tax liability in its estate tax return of $3,204,215.41, which it paid on that date. The return included the following items set out in paragraph ten of the complaint:

"(a) Item 1—22,987 shares of Allied Chemical & Dye Corp., common stock, no par (New York) at 169½, valued at $3,861,816.00.

"(b) Item 2—3,056 shares Allied Chemical & Dye Corp., preferred stock, par $100 (New York) at 125¾, valued at $384,292.00.

"(c) Item 8—14,505 shares Phelps Dodge Corp. stock par $25. (New York) at 24⅜, valued at $353,559.37."

On August 28, 1937, the Deputy Commissioner sent appellant a thirty day deficiency letter advising of a proposed deficiency assessment of $1,304,294.94 before allowance of the eighty per cent credit for state inheritance taxes, making a proposed net deficiency of $363,283.90. This was based primarily on the inclusion in the gross estate of property transferred by decedent prior to his death. Three items of stocks and bonds were listed, one of which was item 1 above. The only thing done with reference to these was to add accrued income. Their base valuation was not disturbed. Appellant, through its attorney,

answered that letter November 24, 1937, saying:

"1. The above letter proposed to add to the gross estate an amount of $743,700.26 as transfers alleged to have been made in contemplation of death. In order to avoid litigation and to dispose of the entire case promptly, the executor will consent to the addition of $318,722.85 to the gross estate in lieu of the above amount of $743,700.26.

"2. All other items protested by the executor are waived.

"3. The attorneys' fees will be reduced from $200,000 to $150,000.

"4. The executor's commissions will be reduced from $272,666.59 to $180,743.33.

"It is understood that the credit for state, estate and inheritance, legacy or succession taxes paid will be allowed upon the presentation of evidence required under Article 9, Regulations 80.

"It is further understood that if this settlement, which is submitted in the form of a compromise, is not accepted, then this letter is not to be used in any way in any proceedings before the United States Board of Tax Appeals, the Courts or any other tribunal which might consider the matter.

"It is also understood that this offer will be either accepted or rejected promptly."

The Deputy Commissioner replied to this on December 27, 1937, as follows:

"Reference is made to your protest against the deficiency in the Federal estate tax of the above-named estate, as set forth in Bureau letter of August 28, 1937.

"The protest, as modified at conferences in this office and the offer of settlement in a letter of November 24, 1937, from J. Marvin Haynes, attorney, relates to the following:

"The deficiency may be reduced to $223,-359.12 through the submission of the evidence required by Article 9 of Regulations 80 on account of State estate, inheritance, legacy or succession taxes. In order to facilitate closing of the case, it is suggested that the enclosed waiver be signed and returned promptly. If the waiver is so returned, the net tax will be assessed and reasonable opportunity afforded for the submission of the credit evidence.

"A reply within twenty days from the date of this letter is desired."

Appellant replied to the above on December 29, 1937:

"We have received your letter of December 27, 1937 in which you advised us of the deficiency in the Federal Estate tax on the above mentioned Estate, amounting to $223,359.12, after allowance for the customary 80% credit for taxes paid to other states.

"Accordingly, we are enclosing herewith the waiver consenting to the immediate assessment of the deficiency of $223,359.12 in estate taxes in connection with this Estate."

A note printed on the waiver sent by the appellant with the above letter reads:

"Note.—This waiver does not extend the statute of limitations for refund or assessment of tax, and is not an agreement as provided under section 606 of the Revenue Act of 1928 [26 U.S.C.A.Int.Rev.Act, page 458]. The submission of the waiver will not prejudice the right to file a claim for refund of any portion of the tax, but will expedite the settlement of the case and will reduce the accumulation of interest, as the regular interest period terminates 30 days after the filing of the waiver or on the date of assessment, whichever is earlier."

| Transfers | Returned | GROSS ESTATE Tentatively Determined | Proposed Determination |
|---|---|---|---|
| | $ 4.00 | $743,700.26 | $318,722.85 |

"From a careful consideration of the law and facts, it is believed that as a basis of settlement, the case may equitably be closed on the basis of the inclusion of $318,722.85 of the transfers.

\*      \*      \*      \*      \*      \*

The deficiency of $223,359.12 was paid by the estate on January 31, 1938, and on April 21, 1939, the Deputy Commissioner wrote appellant that the estate's evidence of payment of state estate, inheritance, legacy or succession taxes entitling it to a credit of:

$924,766.34 had been received and "is herein allowed." He then said, "Inasmuch as the entire estate tax liability has been assessed, the case is considered closed by the Bureau."

On January 20, 1941 appellant filed a claim for refund with the Collector of Internal Revenue for the Fifth District of New Jersey. This alleged overpayment of net tax in the amount of $416,937.60 plus interest of $13,915.58, a total of $430,853.18. It was based on (1) the valuations assigned to the stock items above mentioned, which were alleged to be excessive and erroneous, and (2) the inclusion in the gross estate of the $318,722.15 above referred to, which was said to be unjustified. This suit followed. After it had been commenced appellant's letter of November 24, 1937 was endorsed as accepted on September 23, 1943 by the Commissioner of Internal Revenue and approved September 24, 1943 by the acting Secretary of the Treasury.

The District Court, 76 F.Supp. 549, 552, held "that the principles of equity prohibit the plaintiff's repudiation of the account stated and settled, and the plaintiff is therefore estopped to maintain this action." The District Court further found that stock items 2 and 8 may not have been included in the settlement and were not so identified. In referring to those two items it is conceded that through inadvertence item 1 was not named, as it should have been because it is in the same category. As to these items the Court went on to state that, "Any claim for refund based upon the latter items appears to be barred by statute, Revenue Act of 1926, § 319(b), 26 U.S.C.A.Int.Rev.Code, § ·910, which limits the amount of the refund to 'the portion of the tax paid during the three years immediately preceding the filing of the claim.' The only payment here made by the plaintiff was that in settlement of the account stated." The Court thereupon dismissed the complaint.

■■■ There was unquestionably in this case an informal agreement to settle the one disputed tax item remaining open, namely, the property transfers. The government did accept the compromise proposed by the taxpayer and did consider the matter closed. But with this agreement now blandly repudiated, it is immediately apparent that it was not a true account stated because, as is frankly admitted, the agreement was not a final settlement. To be that it had to be signed by the Commissioner or his designate and approved by the Secretary or Undersecretary of the Treasury in accordance with the statute.[1] Those necessary signatures were obtained after suit had been started, but by then it was too late. The note attached to the waiver expressly states that, "The submission of the waiver will not prejudice the right to file a claim for refund of any portion of the tax * * *." · The cases are clear on the point. Their

---

[1] Section 606 of the Revenue Act of 1928, c. 852, 45 Stat. 791, 26 U.S.C.A. Int.Rev.Acts, page 458, reads:

"§ 606. Closing Agreements.

"(a) Authorization. The Commissioner (or any officer or employee of the Bureau of Internal Revenue, including the field service, authorized in writing by the Commissioner) is authorized to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for whom he acts) in respect of any internal-revenue tax for any taxable period ending prior to the date of the agreement.

"(b) Finality of Agreements. If such agreement is approved by the Secretary or the Undersecretary, within such time as may be stated in such agreement, or later agreed to, such agreement shall be final and conclusive, and, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact—

"(1) the case shall not be reopened as to the matters agreed upon or the agreement modified, by any officer, employee, or agent of the United States, and

"(2) in any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded."

The actual authority to compromise is found in Section 3761 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3761, which states, "The Commissioner, with the approval of the Secretary, or of the Under Secretary of the Treasury, or of an Assistant Secretary of the Treasury, may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the

foundation is the Botany Mills decision[2] where, under a quite similar provision in the Revenue Act of 1921, 42 Stat. 227, the Court said, "It is plain that no compromise is authorized by this statute which is not assented to by the Secretary of the Treasury. * * * For this reason, if for no other, the informal agreement made in this case did not constitute a settlement which in itself was binding upon the Government or the Mills." And the conclusion was, "that the Mills was not precluded by the settlement from recovering any portion of the tax to which it may otherwise have been entitled." In Joyce v. Gentsch, 6 Cir., 141 F.2d 891, there was much the same situation as confronts us. A waiver had been executed, the tax paid and the case closed. After the statute of limitations had run against the government, the taxpayer started a suit for refund. The collector defended on the ground of equitable estoppel. The court held there was no foundation for this because there was no misrepresentation of fact upon which the government relied and no damage shown to the government. Payson v. Commissioner, 2 Cir., 166 F.2d 1008, was another case involving a waiver. There, the government sued for an additional deficiency. The court held the waiver was not a final closing agreement and that the taxpayer's claim of estoppel was groundless. Daube v. United States, 289 U.S. 367, 370, 53 S.Ct. 597, 77 L.Ed. 1261; R. H. Stearns Co. v. United States, 291 U.S. 54, 64, 54 S.Ct. 325, 78 L.Ed. 647; and Bonwit Teller & Co. v. United States, 283 U.S. 258, 51 S.Ct. 395, 75 L.Ed. 1018, cited by the government, are not to the contrary. In the first two decisions there was no account stated at all because there was no binding agreement on behalf of the government. In the third case there was a certificate of overassessment duly executed by the Bureau and delivered to the taxpayer which fulfilled all the requirements of an account stated.

Nor do we find that the refund sought as to the tax paid on the settlement of the property transfer deficiency is barred by the doctrine of equitable estoppel itself. Under the facts there has been no misrepresentation by the taxpayer to the detriment of the government. An agreement of settlement was entered into which was not binding on either side. Now, after the statute of limitations has expired as to the government,[3] the appellant seeks a refund from the tax it had paid under the settlement. In this no damage arises to the government. The character of the transfers of property and the law governing them have not been changed. Indeed, in this very action the government has pleaded a set-off to appellant's claim. In that set-off, in addition to alleging underassessment as a reason for appellant's not recovering in its action, the government affirmatively states that a balance of the tax amounting to $310,383.83 remains due and unpaid. While this is not entitled "recoupment" and while no affirmative money judgment is asked in the prayer, the intention to seek recoupment seems evident, and the pleading can be further amended if that should be indicated. The right to recoup such balance after the statute of limitations has expired is unquestionable. Bull v. United States, 295 U.S. 247, 262, 55 S.Ct. 695, 79 L.Ed. 1421; Crossett Lumber Co. v. United States, 8 Cir., 87 F.2d 930, 109 A.L.R. 1348.

As to the three stock items, we think it clear from the correspondence that they were not part of the adjustment. Item 1 was the only one referred to, and that reference had merely to do with adding accrued income to it. The compromise was worked out solely in connection with the transfers by the decedent of property, all of it in cash, which was the only remaining

---

Department of Justice for prosecution or defense * * *."

[2] Botany Worsted Mills v. United States, 278 U.S. 282, 289, 49 S.Ct. 129, 132, 73 L.Ed. 379.

[3] Revenue Act of 1926, c. 27, 44 Stat. 9, 26 U.S.C.A. Int.Rev.Acts, page 248: "Sec. 310. (a) Except as provided in section 311, the amount of the estate taxes imposed by this title shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of three years after the return was filed."

element of estate tax in dispute. And with that out of the way the case was marked closed.[4] Therefore, since the stock was not involved in the deficiency adjustment, it is not affected by the estoppel defense, and the application of such defense to the sought for revaluation of the stock need not be discussed at this stage of the case.

Though the District Court in its discussion did comment, as noted, that the claim for refund based on the stock items appears to be barred by the statute, its sole conclusion of law was:

"It is our conclusion that the principles of equity prohibit the plaintiff's repudiation of the account stated and settled, and the plaintiff is therefore estopped to maintain this action. The action will be dismissed upon the entry of a proper order of dismissal."

As this phase of the litigation stands we are unable to determine with the necessary accuracy the Court's reason for inclusion of the stock items in the restricted trial issue or the basis of their disposal under the above conclusion of law. They were in fact disposed of since the judgment embraced the dismissal of the whole complaint. Since the matter must be sent back for a new trial, it is advisable to point out that such trial should be had on all issues presented by the case. At that time, among other things, any problems which may arise as to the stock items in connection with Section 319(b) can be fully presented and decided.[5]

The judgment of the District Court will be reversed and the case remanded for a new trial in accordance with this opinion.

[4] The government's brief, though conceding in substance that the stock was not identified in the proposed deficiency settlement nevertheless argues that since it was part of the gross estate it was embraced within "the account stated and settled". Its argument is not persuasive.

[5] Section 319(b), Revenue Act of 1926 as amended by Section 810(a) of the Revenue Act of 1932, c. 209, 47 Stat. 169, 26 U.S.C.A. Int.Rev.Code, § 910:

"Sec. 319. * * * All claims for the refunding of the tax imposed by this title alleged to have been erroneously or illegally assessed or collected must be presented to the Commissioner within three years next after the payment of such tax. The amount of the refund shall not exceed the portion of the tax paid during the three years immediately preceding the filing of the claim, or if no claim was filed, then during the three years immediately preceding the allowance of the refund."