**UINTA LIVESTOCK CORPORATION,**
a Wyoming corporation, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 7959.

United States Court of Appeals
Tenth Circuit.

Jan. 4, 1966.

C. Preston Allen, Salt Lake City, Utah (Ray, Quinney & Nebeker, Salt Lake City, Utah, on the brief), for appellant.

J. Edward Shillingburg, Atty., Dept. of Justice, (John B. Jones, Jr., Acting Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks and George F. Lynch, Attys., Dept. of Justice, on the brief), for appellee.

Before MURRAH, Chief Judge, and PICKETT and HILL, Circuit Judges.

HILL, Circuit Judge.

This is an income tax refund suit to recover $88,330.27 of taxes paid for 1948.[1]

The facts are largely undisputed. The Rees Land and Livestock Company, a large family owned corporation, conducted a sheep operation in Wyoming and a cattle operation in Utah. The sheep portion of the corporation comprised approximately 57% of the assets and was operated by William Rees and certain

1. The taxpayer corporation actually paid the following amounts on the dates set forth below.

| | |
|---|---|
| November 4, 1956 | $20,000 |
| December 16, 1957 | 5,000 |
| December 15, 1958 | 5,000 |
| December 10, 1959 | 83,320.27 |

The amounts paid in 1956 and 1957 are not by this action sought to be refunded since the time for seeking a refund for those years had elapsed when the present claim was filed on July 1, 1960.

members of his family.[2] For various reasons, it was decided to split the company. The idea conceived was for the William Rees group of shareholders to form a new corporation (Uinta) by transferring their Rees stock to it for Uinta stock. Uinta Corporation would then exchange the Rees stock it now owned for the sheep assets of the Rees Company. The end result was that the Raymond Rees group of shareholders were left with all the 274 outstanding shares of Rees Company and the cattle business and the William Rees group owned all the stock of Uinta whose assets were the sheep business.[3] All this transpired in 1948. Uinta Corporation did not file a tax return for 1948, nor did the shareholders of Uinta report any gain on their transfer of Rees stock to Uinta for Uinta stock.

Nothing transpired until 1952 when the government began an audit of Uinta Livestock Corporation. The investigation ended in 1955 when the Commissioner prepared a return for Uinta for 1948 showing a capital gain of $351,862.22 and a net operating loss of $28,210.16, leaving a balance of $323,652.06 of capital gain. This proposed return showed a tax liability for Uinta of $87,965.56 and a penalty of $21,991.39 for failure to file a return for the year in question. The proposed deficiency according to the Commissioner arose in this manner: That the transfer of Rees Company stock to Uinta by the shareholders in the William Rees group for the stock of Uinta was a non-taxable exchange under § 112 (b)(5) of the 1939 Code, that Uinta's basis therefore in the Rees Company stock was the same as it was in the hands of the transferors under § 113(a)(8) which was collectively $35,800 [4] and therefore when Uinta transferred this stock to the Rees Company in exchange for the sheep assets, worth as they then contended $387,622.22, a $351,822.22 capital gain was produced. In addition to proposing a deficiency against the taxpayer corporation, the Commissioner also secured waivers of consents from five of the six individual shareholders of the William Rees group shareholders extending until June 30, 1956, the time for making additional assessments against them individually for the year 1948.

Uinta protested the deficiency and conferences with the Appellate Division were had and various affidavits filed, etc. As a result of this, taxpayer gained in some areas and lost ground in others. Appellate Division dropped the $21,991.31 delinquency penalty but denied the $28,-

2. The stock was owned as follows:

| William Rees Group Shareholders | # of shares | Raymond Rees Group Shareholders | # of shares |
|---|---|---|---|
| William Rees | 65 | Raymond Rees | 62 |
| Dale Porter Rees | 60 | Wayne Rees | 117 |
| William J. Rees | 95 | Gordon Rees | 95 |
| Dorothy Rees Gill | 66 | | 274 |
| Lucille Rees Dean | 47 | | |
| Joyce Rees Dunlap | 25 | | |
| | 358 | | |

3. The 1,000 authorized shares of Uinta Livestock Corporation were held then as follows:

| Shareholders | # of Shares |
|---|---|
| William Rees | 153 |
| Dale Porter Rees | 209 |
| William J. Rees | 256 |
| Dorothy Rees Gill | 180 |
| Lucille Rees Dean | 129 |
| Joyce Rees Dunlap | 74 |

4. The shareholders in the William Rees group had a basis of $100 in each share of stock.

210.16 net operating loss. The Appellate Division did agree to a lesser value on the sheep assets coming down from $387,662.22 to $305,352.65.

Uinta finally gave in and agreed to a $67,386.61 deficiency and signed a Form 870–AD waiving restrictions on time for assessment and agreed not to seek a refund for the year in question.[5] Also in the 870–AD the Commissioner agreed not to reopen 1948 absent fraud, etc. At the bottom of the 870–AD it states it is not a final closing agreement under § 7121. The Form 870–AD as signed by Uinta was received by the Appellate Division on June 12, 1956, and was accepted on behalf of the Commissioner on August 23, 1956.

The government in its answer asserted that the Form 870–AD was a bar to this action. Furthermore, the trial court, over plaintiff's objections, allowed the government to amend its pleadings to allege the additional defense of estoppel. The matter was then tried to the court which held first that the taxpayer had failed to prove that the exchange of the Rees stock for Uinta stock was an exchange of anything more than an exchange of corresponding interests and that section 112(b)(5) applied and hence Uinta had a carry-over basis of $35,800

5.            "Offer Of Waiver Of Restrictions On Assessment And Collection of Deficiency in Tax And Of Acceptance Of Overassessment;

Name of Taxpayer: Uinta Livestock Corporation;
Address:          P.O. Box 1216, Lyman, Wyoming
            For Internal Revenue Use Only.
Date Accepted for Commissioner:    Signature:
     August 23, 1956;            J. H. Harlacher-DEW;
Title:        Asst. Regional Commissioner, Appellant;
Office:       Salt Lake City.

Pursuant to the provisions of section 6213(d) of the Internal Revenue Code of 1954, or corresponding provisions of prior internal revenue laws, the undersigned offers to waive the restrictions provided in section 6213(a) of the Internal Revenue Code of 1954, or corresponding provisions of prior internal revenue laws, and to consent to the assessment and collection of the following deficiencies with interest as provided by law. The undersigned offers also to accept the following overassessments as correct:

| Type of Tax | Taxable Year Ended | Deficiencies Tax | 1939 Code Sec. 291(a) Penalty | Total |
|---|---|---|---|---|
| Income | Dec. 31, 1948 | $67,386.61 | None | $67,386.61 |

This offer is subject to acceptance by or on behalf of the Commissioner of Internal Revenue. It shall take effect as a waiver of restrictions on the date it is accepted. Unless and until it is accepted, it shall have no force or effect.

If this proposal is accepted by or on behalf of the Commissioner, the case shall not be reopened in the absence of fraud, malfeasance, concealment or misrepresentation of material fact, or an important mistake in mathematical calculation; and no claim for refund shall be filed or prosecuted for the year(s) above stated other than for the amounts of overassessment shown above. The taxpayer also agrees to make payment of the above deficiencies, together with interest, as provided by law, promptly upon receipt of notice and demand from the District Director of Internal Revenue
s/ Uinta Livestock Corporation, Taxpayer
By Dale Porter Rees, President
By William J. Rees, Secy.                   Corporate seal

Note.—The execution and filing of this offer will expedite the adjustment of your tax liability. It is not, however, a final closing agreement under section 7121 of the Internal Revenue Code of 1954, nor does it extend the statutory period of limitation for refund, assessment, or collection of the tax. * * * ."

for the Rees stock transferred to it. The court further held the taxpayer was barred from prosecuting this claim because it executed Form 870–AD. In the alternative, the court held the taxpayer was estopped from repudiating the deficiency.

The government contends that the taxpayer may not maintain this action by virtue of having executed the Treasury Form 870–AD agreement relating to waiver of restrictions on assessment. True, the agreement does recite that the taxpayer will not seek a refund for the year in question. However, the form also carefully states it is not a closing agreement in accordance with section 7121 of the 1954 Internal Revenue Code. Neither is it a valid compromise of a tax deficiency as prescribed by section 7122 for it was not executed in full compliance with the requirements of that code provision. We believe the Supreme Court answered the question here years ago in Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379, when it said in this regard: "We think that Congress intended by the statute to prescribe the exclusive method by which tax cases could be compromised, * * * and did not intend to intrust the final settlement of such matters to the informal action of subordinate officials in the Bureau. When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode." This Circuit has subscribed to that position in Sanders v. Commissioner of Internal Revenue, 10 Cir., 225 F.2d 629, cert. denied 350 U.S. 967, 76 S.Ct. 435, 100 L.Ed. 839. Furthermore, a sizeable number of courts that have considered the matter are in agreement,[6] although there are differences of opinion.[7] We have no alternative but to hold on these facts that mere execution of a Form 870–AD like the one in question does not in and of itself preclude a taxpayer from filing a claim for refund. We do not sound the death knell on this form of settlement agreement lightly for we recognize the need to effectuate administrative settlements of tax disputes.[8] All we say is that at the present time Congress has specified how tax matters may be settled either by a closing agreement or by compromise. Any changes in that procedure will have to be made by Congress.

The next issue the government raises to defeat the taxpayer's action is the defense of equitable estoppel. Taxpayer however urges this matter should not even be in issue because it was error for the trial court to allow the government to amend its pleadings at the trial to assert this defense. In this regard the trial court was certainly acting within its discretion and we find no abuse thereof. See Wyoming Construction Co. v. Western Casualty & S. Co., 10 Cir., 275 F.2d 97. Therefore, the defense of estoppel is properly in issue.

The crux of the government's estoppel argument is this: That it made several concessions of tax liability in order to secure the Form 870–AD agreement and, as a result of the agreement, it declined to seek deficiency assessments against the individual shareholders of Uinta and allowed the statute of limitations to run against those shareholders.

It is true that the government conceded the delinquency penalty and it did agree to a reduced value for the sheep assets received. However it is also true that it denied the taxpayer a net operating loss of $28,210.16. On balance, the government's concessions for the agreement would not appear to be all one sided. However, the strongest argument made is that by virtue of its reliance on this

---

6. E. g. United States v. Prince, 348 F.2d 746, 2 Cir., 1965; Joyce v. Gentsch, 6 Cir., 141 F.2d 891; L. Loewy & Son v. C. I. R., 2 Cir., 31 F.2d 652; Morris White Fashions, Inc. v. United States, D.C., 176 F.Supp. 760; Steiden Stores v. Glenn, D.C., 94 F.Supp. 712.

7. Notably, Guggenheim v. United States, 77 F.Supp. 186, 111 Ct.Cl. 165, cert. denied, 335 U.S. 908, 69 S.Ct. 411, 93 L.Ed. 441. Cf. Monge v. Smyth, 9 Cir., 229 F.2d 361.

8. See an article by Dean Griswold in 57 Harv.L.Rev. 912.

agreement, the government allowed the statute of limitations to run against the individual shareholders of Uinta Corporation for 1948 and hence it may not deal with that situation further. Even if this factor was enough to invoke the defense of estoppel, we doubt that the government has proved the point which it was incumbent upon it to do. It is impossible for us to say conclusively how the Uinta shareholders affected this whole transaction.[9] The individual shareholders apparently filed timely returns in March of 1949. Under ordinary circumstances, § 275 of the 1939 Code would provide a three year statute of limitations or five years if over 25% of gross income was omitted. Five of the six shareholders of Uinta did sign waivers extending the statute of limitations to June 30, 1956, but not until January of 1954. Therefore, if the three year limitation was applicable to them, the extensions were a nullity for the statute had already run when the waivers were signed. Of course, the waivers extending the statute would have been timely if over 25% of gross income was omitted but the answer to this depends in large part on whether the creation of Uinta was a tax free exchange under § 112(b)(5). If it was, and the government took that position with Uinta, then of course the shareholders had no recognized gain on Uinta's creation. One more factor in this regard bears comment. The Form 870–AD agreement was not executed by the government until August 23, 1956. Even assuming the statute of limitations for the individual shareholders was extended until June 30, 1956, it had expired before the 870–AD was executed by the government and the form very carefully states that it has no effect until accepted by the government.

The subject of equitable estoppel in tax matters is not clear by any means. It has been suggested that to constitute such a defense there must be (1) false representation or wrongful misleading silence, (2) the error must originate in a fact statement not in an opinion or statement of law, (3) the person claiming estoppel must be ignorant of the true facts, and (4) must be adversely affected by the person against whom the estoppel is claimed. Van Antwerp v. United States, 9 Cir., 92 F.2d 871. See also Vol. 10, Mertens, § 60.02. Furthermore, the burden of proving each of these elements is upon the party asserting it. Van Antwerp, supra.

The cases considering the question of equitable estoppel in a situation similar to this do not yield much conformity owing perhaps to different factual situations. Yet we are unable to distinguish the cases purely on a factual basis. However, a considerable number of courts have adhered to a more strict reading of the previously mentioned estoppel elements and found one or more of these elements missing in a situation similar to this, particularly either the lack of detrimental reliance or the lack of false representation. See United States v. Prince, 2 Cir., 348 F.2d 746; Helvering v. Schine Chain Theatres, 2 Cir., 121 F.2d 948; Bank of New York v. United States, 3 Cir., 170 F.2d 20; Van Antwerp v. United States, supra; Joyce v. Gentsch, 6 Cir., 141 F.2d 891; see also 11 A.L.R.2d 903, 912. The Tax Court seems to sanction this line of cases believing it necessary to at least find false representation before denying taxpayer's claim. Arthur V. Davis, 29 T.C. 878 and Badger Materials, Inc., 40 T.C. 725, where it noted quite correctly we believe that mutual mistakes of law do not give rise to estoppel.

On the other hand, a respectable number of courts seem to favor a liberal quasi type of estoppel. See Guggenheim v. United States, 77 F.Supp. 186, 111 Ct. Cl. 165, cert. denied 335 U.S. 908, 69 S.

9. Furthermore, in appellant's reply brief it asserts that these individual shareholders have sold their Uinta stock and paid a tax thereon in 1959. The exhibits of the shareholders' individual returns for 1959 indicate with some modification that they did not use a stepped up basis for their Uinta stock. The government has not disputed this.

Ct. 411, 93 L.Ed. 441, followed recently in H. W. Nelson Company v. United States, 308 F.2d 950, 158 Ct.Cl. 629; Cain v. United States, 8 Cir., 255 F.2d 193; and Daugette v. Patterson, 5 Cir., 250 F.2d 753, cert. denied 356 U.S. 902, 78 S.Ct. 561, 2 L.Ed.2d 580. Cf. Girard v. Gill, D.C., 142 F.Supp. 770, aff. per curiam 243 F.2d 166 (4th Cir.). Their position can perhaps best be summed up if at all in the words of the Eighth Circuit in the Cain case where the court said at page 199 of 255 F.2d, " * * * We think it is sufficient to preclude a taxpayer from claiming refund, in relation to an executed settlement agreement, that the statute of limitations has run against the right of the Commissioner to deal with the situation further." The court also indicated it was concerned there because the agreement also effected the tax status of other parties since a partnership was involved. In Daugette v. Patterson, the Fifth Circuit followed the Guggenheim case and the language therein which stated, "It would obviously be inequitable to allow the plaintiff to renounce the agreement when the Commissioner cannot be placed in the same position he was when the agreement was executed."

One of the most recent cases to examine the issue confronting us is an opinion by Judge Dawson in Morris White Fashions, Inc. v. United States, D.C.S.D. N.Y., 176 F.Supp. 760 (1959). In a lengthy review, Judge Dawson concludes that the cases applying estoppel overlook one factor; that is the government can always plead recoupment to a refund suit like this. The doctrine of recoupment announced in Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421, allows the government to offset a barred deficiency against a valid refund. Whatever effect the recoupment doctrine still has, we decline to rest our decision based upon its applicability for it may be possible in cases like this that the government has no barred deficiency to raise and then the issue remains of whether or not to allow the refund suit. Also, recoupment could not be used against the corporate shareholders in any event for they are different parties from the taxpayer here.

The answer is by no means an easy one, but we believe after weighing the matter carefully that we must subscribe to the ordinary rules of equitable estoppel. The government has not pointed to any action of the taxpayer that was misleading and certainly we can find no false representation. In fact, the taxpayer has done nothing except pay an asserted deficiency the Commissioner contended was correct and it is the Commissioner's misfortune if he mistakenly went after the wrong taxpayer. Furthermore, the facts do not indicate a strong case of reliance and detriment especially when the Commissioner should have been aware of the doubtful validity of an agreement which is neither a closing agreement nor a compromise signed by the Secretary. By applying some kind of estoppel to a situation like this where the true elements of estoppel are not present, we would be breathing life into the Form 870-AD agreement where the Supreme Court said in the Botany case, supra, there should be none.

The basic substantive tax question to decide here is the proper tax basis to Uinta of the Rees Company stock transferred to it individually by the William Rees Group shareholders. The applicable basis provision of the 1939 Code is § 113(a)(8). It provides.

"The basis of property shall be the cost of such property; except that * * *

(8) If the property was acquired after December 31, 1920, by a corporation * * *

(a) By the issuance of its stock or securities in connection with a transaction described in section 112(b) (5) (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money, in addition to such stock or securities), * * * then the basis shall be the same as it would be in the hands of

the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made."

With this provision in mind, we must examine the facts surrounding the creation of Uinta Corporation to see if § 112(b)(5) was applicable. In so doing we will have the answer to the basis question.

§ 112(b)(5) of the Internal Revenue Code of 1939 provides in pertinent part that:

"No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; *but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.* * * *." [Emphasis added]

Thus, we must see if the stock of Uinta received individually by each of the William Rees family was substantially in proportion to his or her interest in the Rees Land & Livestock Company stock which was transferred to Uinta. The parties apparently concede that all the other requirements of § 112(b)(5) were met.

The phrase "substantially in proportion" caused considerable uncertainty in the application of § 112(b)(5).[10] At least two different tests have been utilized by various courts in deciding this issue. Each test compares the interest of the transferor before and after the exchange took place; the difference between the two being the spread. One such test is the control test and has been favorably received by some courts.[11] It requires a comparison between the proportionate interest of each transferor in the property transferred and his proportionate interest in the stock exchange therefor.[12] The mathematics of this test would indicate at the extremes that William Rees lost 2.95% control whereas Dale Rees had a 4.14% increase in control.[13] The trial court apparently relied on that test and on the facts held the taxpayer had failed to prove the exchange was anything more than an exchange of equivalent or corresponding interests.

10. H.Rept. #1337, 83rd Cong., 2nd Sess. 1954, U.S.Code Cong. & Admin.News 1954, p. 4025, which discusses § 351 of the 1954 Code which is similar to old § 112(b)(5). We also note in passing that in the 1954 Code, § 351 makes no mention of the substantiality in proportion requirement.

11. See Mather & Co. v. C. I. R., 3 Cir., 171 F.2d 864, cert. denied 337 U.S. 907, 69 S. Ct. 1049, 93 L.Ed. 1719, and the cases cited therein.

12. 1952 C.C.H. Standard Federal Tax Reports Par. 728.17.

13. The comparison for all the transferors appears as follows:
Proportionate Interests Of The William Rees Family

|  | Value of Property Conveyed | % Of Total | Dollar Interest Received | % Of Total | % Variation |
|---|---|---|---|---|---|
| William Rees | $55,440.00 | 18.15 | $46,412.66 | 15.20 | −2.95 |
| Dale Porter Rees | 51,175.38 | 16.75 | 63,817.40 | 20.89 | +4.14 |
| William J. Rees | 81,027.69 | 26.53 | 78,168.69 | 25.60 | − .93 |
| Dorothy Rees Gill | 56,292.92 | 18.43 | 54,962.36 | 18.00 | − .43 |
| Lucille Rees Dean | 40,087.38 | 13.12 | 39,389.69 | 12.89 | − .23 |
| Joyce Rees Dunlap | 21,323.07 | 6.98 | 22,595.64 | 7.40 | + .42 |
| Total | $305,346.44 | | $305,346.44 | | |

We reject this control test [14] and adopt the test we believe to be the most valid and approved by a majority of the cases found which is the "relative value test".[15] This method seeks to ascertain the proportionality of each transfer based solely on monetary values and is accomplished by comparing the gain or loss sustained by each transferor with the value of the interest transferred. A computation for the various members of the William Rees family is set forth below.[16] At the extremes here it can be seen that William Rees suffered a $9,027.34 loss or a –16.-2+% decrease and Dale Porter Rees had a $12,642.02 gain which is a +24.7% increase for him. Based on these disparities, we conclude that the exchange was not substantially proportionate. The government has called to our attention that the transferors and their attorney stated in affidavits that it was at the time their intention to effectuate a pro-rata exchange where each person would have the same interest after the transfer as before. The answer here is that what the parties intended is of no importance for our decision must be based on what actually transpired.

Having determined that the exchange by the William Rees Group shareholders of their Rees Company stock for Uinta stock did not meet the requirements of § 112(b)(5), the transaction was a taxable exchange. By virtue of § 113(a), Uinta's basis for the Rees Company stock received must be its cost which in this case would be the fair market value of $305,346.44.[17] Therefore, when the taxpayer, Uinta, exchanged this stock for the sheep assets of Rees Company worth an identical amount, no gain was produced.

The judgment appealed from is reversed with directions to enter judgment in favor of the appellant taxpayer as prayed for in its complaint.

14. See also a rejection of this test in Paul & Mertens, Law of Federal Income Taxation, Vol. 2, § 17.43 (1934).

15. Bodell v. C. I. R., 1 Cir., 154 F.2d 407; United Carbon Co. v. C. I. R., 4 Cir., 90 F.2d 43; C. I. R. v. Lincoln-Boyle Ice Co., 7 Cir., 93 F.2d 26; Snead v. Jackson Securities & Investment Co., 5 Cir., 77 F.2d 19, cert. denied, 296 U.S. 599, 56 S.Ct. 115, 80 L.Ed. 424; Cf. Blair v. C. I. R., 2 Cir., 91 F.2d 992.

16.

| Shareholder | Dollar Interest In Rees Stock Given Up | Dollar Interest In Uinta Stock Received | Dollar Loss or Gain | Percentage Change |
|---|---|---|---|---|
| William Rees | $55,440.00 | $46,412.66 | ($9,027.34) | –16.2% |
| Dale Porter Rees | 51,175.38 | 63,817.40 | 12,642.02 | +24.7% |
| William J. Rees | 81,027.69 | 78,168.69 | ( 2,859.00) | – 3.5+% |
| Dorothy Rees Gill | 56,292.92 | 54,962.36 | ( 1,330.56) | – 2.3+% |
| Lucille Rees Dean | 40,087.38 | 39,389.69 | ( 697.69) | – 1.7+% |
| Joyce Rees Dunlap | 21,343.07 | 22,595.64 | 1,272.57 | + 5.9+% |
| | $305,346.44 | 305,346.44 | | |

17. The government in its brief asserts that the taxpayer failed to prove the value of the Uinta stock exchanged for the Rees Company stock. Presumably Uinta Company intended to and did pay only the fair market value for the stock which was $305,346.55 or the fair value of the sheep assets. The parties both agreed that this figure represented the value of the sheep assets on December 31, 1948, when they were exchanged for Rees Company stock. There is nothing in the record to indicate that this value changed between November and December of 1948.