**METROPOLITAN DADE COUNTY,
Plaintiff,**

v.

**UNITED STATES of America et al.,
Defendants–Appellees,**

v.

**STATE OF FLORIDA,
Movant–Appellant.**

No. 79–2038.

United States Court of Appeals,
Fifth Circuit.
Unit B

Jan. 30, 1981.

Philip T. Weinstein, Acting State Atty., Miami, Fla., Jim Smith, Atty. Gen., Joseph C. Mellichamp, III, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for State of Fla.

William S. Estabrook, III, Karl Schmeidler, Crombie J. D. Garrett, Attys., Appellate Sec., Tax Div., Dept. of Justice, Washington, D. C., for the United States et al.

Before HILL, KRAVITCH and HATCHETT, Circuit Judges.

KRAVITCH, Circuit Judge.

In this case we are asked to determine whether confiscated funds seized by the state of Florida under the authority of a specific gambling statute are subject to an IRS tax levy. We hold that the funds had escheated to the state at the time of the IRS notice of levy and reverse the district court's award to the United States.

*Facts*

The dispute had its genesis on February 2, 1974, when Dade County police officers seized $31,733.90 incident to the arrest of several persons on gambling charges. The persons arrested (the taxpayers) were tried in state court for violation of specific Florida gambling statutes (F.S. § 849.09(1)(a) and (b) (1975)). During the criminal trial, the judge ordered that the confiscated funds be held by the Property Custodian of the Dade County Public Safety Department pending further order of the court.

Meanwhile, on February 11, 1974, nine days after the arrest and seizure, the Internal Revenue Service made assessments against the taxpayers in the amount of $118,873.79 for wagering excise taxes. On February 22, 1974, the IRS served a notice of levy on the Dade County Public Safety Department, Property Bureau, for the amount of $118,873.79.

In February 1975, the taxpayers were convicted in state court of the gambling charges. After exhausting their appeals, they filed a motion for return of seized property in the criminal division of the court in which they had been convicted. That court, on February 9, 1977, ordered that $7,646.50[1] of the seized currency was "contraband and an escheat to the state of Florida."[2]

At the time of this ruling by the state court, two legal proceedings concerning ownership of the funds were pending. Dade County, which had custody of the funds, had filed an interpleader action in state court seeking to determine ownership of the funds, and the United States had brought an independent action in federal court against Dade County to require the county to pay the funds to the IRS. The United States then removed the state interpleader action to federal court, and on February 14, 1977, three days after the state court had declared the funds an escheat to the state of Florida, the federal district court ordered the funds paid into the registry of the court. The district court ultimately granted summary judgment for the IRS in the interpleader action. The state of Florida now appeals that order.

*Discussion*

Although the facts and the procedural history of the controversy are complex, the issue before this court is relatively straightforward. Certain propositions are not in

---

1. This figure is the actual amount in dispute in this case. The court found the remainder of the funds not to be contraband and therefore the property of the taxpayers.

2. The IRS was not a party in this action, although an agent of the IRS was present at the hearing as, in the words of the IRS agent, "a friend of the court." The state contends that by failing to intervene in those proceedings, the IRS waived any rights in the currency. *See United States v. Bleasby,* 257 F.2d 278 (3d Cir. 1958). Because we decide this case on other grounds, we need not address this contention.

dispute: a federal tax lien arose in favor of the United States upon all property and rights to property belonging to the taxpayers on February 11, 1974. To the extent the funds seized by the state of Florida belonged to the taxpayers on February 11, 1974, such funds passed to the state of Florida with the federal tax liens attaching. *See United States v. Security Tr. & Sav. Bk.*, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950); *Glass City Bank v. United States*, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1945). If, on the other hand, the taxpayers had no property interest in the confiscated currency, a federal tax lien could not attach. Federal tax liens may attach only to the property of the person liable to pay the tax. I.R.C. § 6321. The controlling issue, therefore, is whether the taxpayers had a property interest in the seized currency at the time the IRS filed its levy.

■ Whether a taxpayer has an interest in property for purposes of federal taxation is a question of state law. *Aquilino v. United States*, 363 U.S. 509, 512–14, 80 S.Ct. 1277, 1279–80, 4 L.Ed.2d 1365 (1960). The parties agree that the relevant Florida law on this question is found in a single statute:

FLORIDA STATUTES § 933.14(1) (1973)

§ 933.14 *Return of Property Taken Under Search Warrant.*

(1) If it appears to the magistrate or judge before whom the warrant is returned that the property or papers taken are not the same as that described in the warrant, or that there is no probable cause for believing the existence of the grounds upon which the warrant was issued, or if it appears to the magistrate before whom any property is returned that the property was secured by an "unreasonable" search, the judge or magistrate may order a return of the property taken; provided, however, that in no instance shall contraband such as slot machines, gambling tables, lottery tickets, talley sheets, rundown sheets, or other gambling devices, paraphernalia and equipment, or narcotic drugs, obscene prints and literature be returned to any-

one claiming an interest therein, it being the specific intent of the Legislature that no one has any property rights subject to be protected by any constitutional provision in such contraband; provided further, that the claimant of said contraband may upon sworn petition and proof submitted by him in the circuit court of the county where seized, show that said contraband articles so seized were held, used or possessed in a lawful manner, for a lawful purpose, and in a lawful place, the burden of proof in all cases being upon the claimant. The sworn affidavit or complaint upon which the search warrant was issued or the testimony of the officers showing probable cause to search without a warrant or incident to a legal arrest, and the finding of such slot machines, gambling tables, lottery tickets, talley sheets, rundown sheets, scratch sheets, or other gambling devices, paraphernalia, and equipment, including money used in gambling or in furtherance of gambling, or narcotic drugs, obscene prints and literature, or any of them, shall constitute prima facie evidence of the illegal possession of such contraband and the burden shall be upon the claimant for the return thereof, to show that such contraband was lawfully acquired, possessed, held, and used.

■ The state relies on the following language of this statute: "... it [is] the specific intent of the Legislature that no one has any property rights subject to be protected by any constitutional provision in such contraband." If, as this language indicates, the taxpayers had no property rights in the seized currency, a federal tax lien could not attach.

The IRS concedes that under Florida law no one has property rights in seized contraband such as gambling devices, paraphernalia, and equipment. It contends, however, that Florida law treats this type of contraband differently from *currency* used for gambling purposes. Essentially, it argues that money is not contraband *per se*; rather, money is only considered contraband and an escheat to the state upon a court deter-

mination that it was used in gambling or in furtherance of gambling. Thus, the IRS concludes, because there had not yet been a court determination of forfeiture, the seized currency was the property of the taxpayers when the federal tax lien arose.

We cannot accept this argument. The parties have not directed us to any Florida appellate court cases, nor have we found any, that distinguish currency from contraband *per se* for purposes of § 933.14.[3] Further, we cannot agree with the IRS that the language of the statute itself suggests such a distinction. Chapter 933 contains no general definition of the term "contraband"; section 933.14(1) simply lists the types of contraband covered by the statute. The phrase "money used in gambling or in furtherance of gambling" does not occur in the list of contraband in the first part of subsection (1); the phrase concerning money occurs in the list of contraband in the latter part of subsection (1), the portion of the statute which gives a claimant a right to show that the contraband articles "were held, used, or possessed in a lawful manner for a lawful purpose." The IRS urges us to find in this language a legislative intent to treat money differently from gambling paraphernalia.

Reading the statute as a whole, we find no indication of a legislative intent to treat money differently from other contraband. The fact that money used for gambling purposes may be recovered by the claimant upon a showing of lawful purpose is of no benefit to the IRS; *all* contraband under the statute may be so recovered. The unescapable intent of the Florida legislature is that all contraband, including money, escheats upon seizure.[4]

In contending that the taxpayers retained a property interest in the currency after it was confiscated, the IRS relies on *United States v. Security Trust and Savings Bank*,

340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950). In that case the Supreme Court held that a federal tax lien had priority over an attachment lien on property, where the federal tax lien was recorded after the date of the attachment lien but before the attaching creditor obtained judgment. The Court found that under California law an attachment lien is merely contingent or inchoate unless and until the creditor obtains a judgment. The IRS contends that the act of confiscation in this case is analogous to an attachment lien. Thus, it argues, confiscation did not immediately divest the taxpayers of their property rights in the currency; rather, the forfeiture was inchoate until the criminal court entered its order of escheature.

Again, however, the language of the statute refutes the argument of the IRS. Under the statute, the "owners" of seized contraband are not "divested" of any property rights; the legislature expressly stated that "no one has any property rights" in seized contraband. Section 933.14 provides a procedure whereby a claimant to seized contraband may recover such contraband if he can show that the "contraband was lawfully acquired, possessed, held, and used," but the burden is expressly placed on the claimant. We conclude that confiscation under § 933.-14 is not analogous to a "contingent or inchoate" attachment lien.

Likewise, the Florida forfeiture cases cited by the IRS are inapposite. Many Florida cases state that as a general rule forfeitures are not favored. *See, e. g., Boyle v. State*, 47 So.2d 693 (Fla.1950); *General Motors Acceptance Corp. v. State*, 152 Fla. 297, 11 So.2d 482 (1943); *City of Miami v. Miller*, 148 Fla. 349, 4 So.2d 369 (1941). None of these cases, however, interprets the statute at issue here. Section 933.14 is not couched in terms of forfeiture at all; as noted above, the statute specifically disclaims any property rights in contraband.

**3.** The state has referred us to one trial court opinion on point: *State v. Twenty–Six Thousand, Six Hundred, Forty–Eight Dollars and Seventy–Four Cents*, 15 A.F.T.R.2d 271 (1964), *aff'd* 179 So.2d 890 (Fla. 3d DCA 1965). In that case the circuit court determined that funds seized from a gambling house, and upon which

the IRS subsequently filed liens, were confiscated to the state. The claim of the IRS was accordingly denied.

**4.** The IRS has not challenged the constitutionality of § 933.14.

*Conclusion*

The currency at issue here had already been seized and thus had escheated to the state when the IRS filed its notice of levy. Consequently, a federal tax lien could not attach. Accordingly, we REVERSE.