**UNITED STATES of America, Plaintiff,**

v.

**Gerald H. WILKINSON, First National Bank of Boulder, and the County of Boulder, State of Colorado, Defendants.**

**Civ. A. No. 81–C–2061.**

United States District Court, D. Colorado.

July 25, 1985.

Robert S. Horwitz, Trial Atty., Tax Div. Dept. of Justice, Washington, D.C., Nancy E. Rice, Asst. U.S. Atty., Denver, Colo., for plaintiff.

William Ahlstrand, Boulder, Colo., for First Nat. Bank of Boulder.

Peter Van Zante and William Meyer, Boulder, Colo., for Boulder County.

## ORDER

CARRIGAN, District Judge.

On June 11, 1980, officers from the Boulder County, Colorado, Sheriff's Department discovered 340 pounds of marijuana, other narcotics, $605,000 in cash and sixteen precious stones at Gerald H. Wilkinson's house in Boulder County, Colorado. On June 2, 1980, the Boulder County District Attorney filed a civil action in Boulder County District Court pursuant to Colo. Rev.Stat. § 16–13–303 (1973) seeking seizure and forfeiture of the property. On June 13, 1980, Judge Richard Dana entered an appropriate order and the Boulder County Sheriff executed that order by seizing the property and cash. The $605,000 cash was deposited in the First National Bank of Boulder.

The Internal Revenue Service (IRS) assessed $2,331,675.55 in income taxes against Wilkinson for the period from January 1, 1980 to June 30, 1980. On June 19, 1980, the United States filed a notice of federal tax lien with the Boulder County Recorder. On October 14, 1980, Judge Dana issued an order declaring that the property was forfeited as of June 13, 1980. Judge Dana's order placed $300,000 of the cash in an escrow account to be used to pay "the Internal Revenue Service of the United States of America for income tax liability of the defendant resulting from this circumstance only."

The United States filed this action on November 27, 1981, seeking to foreclose on its revised tax lien of $700,000. The government can only enforce its tax lien against the seized cash and property if Wilkinson had property rights in it at the time the lien was filed. *Aquilino v. United States*, 363 U.S. 509, 513, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960). Because no Colorado law existed regarding when Wilkinson's property rights terminated, the following question was certified to the Colorado Supreme Court:

"What is the nature and extent of the property interest, if any, retained by a person subsequent to the seizure of his property pursuant to § 16–13–303, C.R.S. 1973, as effective on June 13, 1980, but prior to judicial determination pursuant to §§ 16–13–307, *et seq.*, C.R.S.1973?"

The State Supreme Court thus resolved the issue on August 27, 1984:

"We hold that a person is divested of all rights and interests in property upon its seizure under the Colorado Abatement of Public Nuisance statute (Public

Nuisance statute), sections 16–13–301 to –316, 8 C.R.S. (1978 & 1983 Supp.). Therefore, our answer to the certified question is that there is no property interest retained during the period in question."

The parties have submitted cross motions for summary judgment. Defendant County of Boulder, also seeks attorneys' fees from the plaintiff. The parties have briefed the issues thoroughly, and oral argument would not assist in resolving them. Jurisdiction is based on 28 U.S.C. §§ 1340 and 1345 (1982).

■ Under the rule announced by the Colorado Supreme Court, Wilkinson's property rights ended on June 13, 1980, the date of the seizure. Thus on June 19, 1980, when the IRS filed notice of its tax lien against Wilkinson's property Wilkinson had no property interest in the contested funds and property. It had been forfeited to Boulder County, *nunc pro tunc.* The tax lien cannot be enforced because it is a lien against nothing.

The government agrees that Colorado property law governs the issue of Wilkinson's ownership rights. However, it argues that the "legal fiction" of terminating Wilkinson's ownership on the date of the seizure cannot cut off the federal tax lien. The government relies on two cases: *United States v. Acri,* 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264 (1955); and *United States v. Security Trust & Savings Bank,* 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950). In both *Acri* and *Security Trust,* a competing creditor had obtained an attachment lien prior to the date the tax lien arose, but did not obtain a judgment against the taxpayer until after the tax lien arose. Under applicable state law, the judgment lien related back to the time the attachment arose. The Supreme Court held that the "relation back doctrine" would not defeat the priority of the federal tax lien.

Those cases are unlike the present case because they involved the competing priori-

ty of *liens.* Here, the issue does not involve the priority of Boulder County's "lien" or the date on which Wilkinson encumbered his property rights with a lien, but rather the date on which Wilkinson surrendered *all* his ownership rights.

The government contends that even if Judge Dana's forfeiture order related back to June 13, 1980, and thereby avoided the government's tax lien, the government is still entitled to the $300,000 that Judge Dana escrowed for the express purpose of paying Wilkinson's federal tax liability. The government argues that even if it cannot enforce its tax lien, Judge Dana granted them part of their claim in his forfeiture order.

■ Colorado Revised Statute § 16–13–311 (1973), in effect at the time Judge Dana considered this matter, set forth how property obtained in § 16–13–303 forfeiture proceedings was to be distributed. Section 16–13–311 does not allow distribution of forfeiture proceeds to lien creditors [1] or to pay tax liability. Judge Dana simply did not have the authority to grant the seized property to the federal government to pay Wilkinson's unpaid taxes.

■ Boulder County has moved for attorneys' fees against the government. Because this action involved very close legal questions presented without guidance of any established precedents, and because the briefs on both sides competently argued the issues, it would not be appropriate to assess attorneys' fees against the government.

Accordingly, IT IS ORDERED that

1. Defendant's motion for summary judgment is granted; the plaintiff's complaint is dismissed with prejudice;

2. Plaintiff has no interest in the funds and personal property held by the First National Bank of Boulder; and

3. Defendant's motion for costs and attorneys' fees is denied.

---

1. The government was not even a lien creditor.