**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Lloyd Ferrell WINGFIELD, Defendant-Appellee.**

**Appeal of COUNTY OF BOULDER, COLORADO.**

**No. 84–2197.**

United States Court of Appeals, Tenth Circuit.

June 15, 1987.

William D. Meyer, Hutchinson, Black, Hill, Buchanan & Cook, Boulder, Colo., for appellant.

Francis M. Allegra, Dept. of Justice, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup and Carleton D. Powell, Dept. of Justice, Washington, D.C., and Robert N. Miller, U.S. Atty., were also on the brief), for appellee.

Before HOLLOWAY, Chief Judge, and BARRETT and McKAY, Circuit Judges.

HOLLOWAY, Chief Judge.

This case presents a series of tangled jurisdictional questions involving the district court's subject matter jurisdiction of this case and its jurisdiction as to the Government. The underlying merits involve the status of a federal tax lien on contents of property seized and forfeited pursuant to a Colorado statute as a public nuisance because of use for unlawful activities involving controlled substances. The Government says the contents passed to Boulder County after the tax lien attached. The County of Boulder disagrees and claims the property for itself, clear of the tax lien. The district court agreed with the Government. We affirm.

## I

### FACTUAL BACKGROUND

On November 5, 1982, Lloyd Ferrell Wingfield was arrested at his home by FBI agents pursuant to a federal arrest warrant charging him with unlawful flight to avoid prosecution. The arresting FBI agents were accompanied by an officer of the Boulder Police Department. At the time of the arrest, the Boulder Police Officer observed marijuana in Wingfield's resi-

dence. The officer obtained a state warrant authorizing a search of the premises. Execution of the search warrant by federal and county agents and officers resulted in the seizure of the following items, *inter alia:* (1) eighteen grams of cocaine; (2) approximately $89,676.00 in United States currency; (3) a personal check in the amount of $688.00; and (4) various foreign currency, mint proof sets, and bars of Englehart silver, collectively valued at approximately $35,000.

On November 8, 1982, the Government filed a complaint charging Wingfield with possession of a controlled substance with the intent to distribute. On the same date, the District Attorney for Boulder County filed a civil action against Wingfield in the District Court for Boulder County pursuant to the Colorado Abatement of Public Nuisance Statute, Colo.Rev.Stat. § 16–13–307. The following day local authorities released the seized items for use as evidence in the federal criminal case. It is that case against Wingfield which produces the appeal now before us.

On November 16, 1982, the State court granted Boulder County's temporary restraining order against the seized items, finding that the seized items had been used in conducting, maintaining, aiding and abetting a public nuisance. The State court further ordered pursuant to § 16–13–308 that no person take any action to encumber, transfer, or assert a right of immediate possession to the seized items.

On January 13, 1983, the Internal Revenue Service (IRS) assessed income tax deficiencies against Wingfield for federal income taxes and on January 19 filed notices of federal tax liens with the Clerk and Recorder of Boulder County. After a trial to the court on written stipulation Wingfield was convicted on February 11, 1983, on the federal criminal charge.

On May 17, 1983, the State court issued an order effective *nunc pro tunc* to the date of seizure of the property (November 5, 1982), finding that the items seized by federal and state agents in Wingfield's home on November 5, 1982, were seized from premises which constituted a class I

public nuisance and thus were forfeited to the county. Furthermore, the court held that there was no evidence which would entitle Wingfield to redelivery of the seized items. Wingfield appealed the State court's decision.

On September 1, 1983, after various conflicting claims to the seized items had been asserted, the federal district court ordered that the funds be deposited with the Clerk of that court. The court further ordered that notice be sent to the IRS, the United States Attorney's Office, and the County of Boulder "so that claims can be presented and disposition effectuated." I R. 32.

Thereafter Wingfield, the IRS, and the County of Boulder filed claims to the seized items. After a hearing the district court held that the State forfeiture decree could not supplant a previously filed federal tax lien, finding that a "State statute cannot subvert the primary authority of the federal government to collect its taxes under these circumstances." III R. 14. The court ordered the clerk of the court to satisfy the claim of the IRS and, if any proceeds remained, to satisfy the claim of Boulder County. The claimant Wingfield was held not entitled to any of the funds.

On February 28, 1985, the Colorado Court of Appeals affirmed in part and reversed in part the forfeiture judgment of the Boulder County District Court. *Colorado v. Lot 23*, 707 P.2d 1001 (Colo.Ct.App. 1985). The court affirmed the State district court's judgment of forfeiture except as to the Englehart silver bars found in buckets, the Canadian mint sets found in buckets, and the Canadian currency found in a glass pitcher. *Id.* at 1004–05. As to these items Wingfield's rights to ownership were restored.

On May 8, 1987, the Supreme Court of Colorado affirmed in part and reversed in part the Colorado Court of Appeals decision ordering the reinstatement of the district court's forfeiture order. *Colorado v. Lot 23*, 735 P.2d 184 (Colo.1987). The Colorado Supreme Court held that the Colorado Court of Appeals had misconstrued the proper burden of proof that the State must necessarily carry in abatement of public

nuisance cases. The proper standard was whether the State has proved by a preponderance of the evidence that the items seized were used in the criminal activity. *Id.* at 188–89. The court answered in the affirmative, stating that all of the seized property was properly forfeited to the State.[1]

## II

## JURISDICTION

### A.

### Ancillary Jurisdiction

Initially we must confront the jurisdictional questions generated by the complex procedural posture of the case. The case began as a federal criminal prosecution for possession with intent to distribute a controlled substance. The defendant in the criminal case was Wingfield. In the instant appeal, the controversy centers on a dispute between the IRS and the County of Boulder concerning rights to items seized at Wingfield's residence. These items were held by the district court as possible evidence in the criminal trial. The court concluded that it had the authority to resolve conflicting claims to the seized items as a matter of ancillary jurisdiction. The County of Boulder contends that the district court could not properly exercise ancillary jurisdiction in these circumstances.

■ Ancillary jurisdiction rests on the premise that a federal court acquires jurisdiction of a case or controversy in its entirety. *Jenkins v. Weinshienk*, 670 F.2d 915, 918 (10th Cir.1982). The district courts have jurisdiction to enter orders ancillary to a criminal proceeding concerning disposition of materials legally seized in connection with the criminal investigation of a case. *See, e.g., United States v. Rangel*, 608 F.2d 120, 121 (5th Cir.1979) (and cases cited therein). The interests of judicial efficiency dictate that the conflicting claims to property seized as evidence

should be resolved by the criminal court. *United States v. LaFatch*, 565 F.2d 81, 83 (6th Cir.1977), *cert. denied*, 435 U.S. 971, 98 S.Ct. 1611, 56 L.Ed.2d 62 (1978).

In *Herzfeld v. United States District Court for the District of Colorado*, 699 F.2d 503 (10th Cir.), *cert. denied*, 464 U.S. 815, 104 S.Ct. 70, 78 L.Ed.2d 84 (1983), we held proper the district court's exercise of ancillary jurisdiction to appoint a receiver in a criminal case to effectuate a disposition of property to accomplish restitution by the defendant. There the court observed:

A criminal proceeding in a United States district court is not in a separate compartment with the court exercising only a limited portion of its authority as the appellants argue. The federal courts obviously are of limited jurisdiction but the extent of the authority of the district courts in these circumstances is not limited or governed by whether the proceeding is criminal or civil.

*Id.* at 506.

■ Here the seized property was to be used as evidence in a federal criminal case. The property was in the custody and control of the federal district court. It is this court which must determine the proper distribution of funds currently in its possession. We conclude that the district court does have the jurisdiction to enter an order concerning disposition of seized property in its control. Although the defendant was convicted on his plea of guilty, the district court had before it the facts and circumstances of the case. *Cf. United States v. Ortega*, 450 F.Supp. 211, 212 (S.D.N.Y. 1978). It would result in a needless waste of judicial resources not to exercise ancillary jurisdiction here. Moreover, the existence of adequate civil remedies neither discharges the court's duties nor disturbs its jurisdiction. *See United States v. Wilson*, 540 F.2d 1100, 1104 (D.C.Cir.1976).

---

1. The United States was never made a party to the state forfeiture proceedings. Moreover, the State forfeiture proceedings did not address the validity and priority of the federal tax lien, the issue before us; rather, the precise issue before the State courts was whether Wingfield's residence constituted a class I public nuisance, and, if so, whether all the seized property was subject to forfeiture.

Thus the court's ancillary jurisdiction was properly exercised to dispose of the claims to the property in the custody of the court.

## B.

## Appellate Jurisdiction

The Government argues that this court lacks appellate jurisdiction over this matter. It also says that the present action is barred by the doctrine of sovereign immunity. Moreover, the Government contends that the district court exercised *in rem* jurisdiction over the seized property and that such jurisdiction ceased to be valid on the distribution of the *res* to the Government. It further argues that it was incumbent upon Boulder County to obtain a stay of the district court's order if it desired to preserve jurisdiction for an appeal.

■ The Government's argument that the action is barred by the doctrine of sovereign immunity is without merit. In considering suits against the federal government, we must determine whether a valid waiver of sovereign immunity exists. If not, the Government is immune from suit and we lack subject matter jurisdiction. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); *United States v. Sherwood*, 312 U.S. 584, 586–88, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941).

Internal Revenue Code § 7426(a)(1) provides:

**Wrongful Levy.**—If a levy has been made on property ..., any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary.

Section 7426 permits a third party to bring an action challenging the lawfulness of governmental levies made against property in which he claims an interest. *Inter-*

*first Bank Dallas, N.A. v. United States,* 769 F.2d 299, 304 (5th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 1458, 89 L.Ed.2d 716 (1986); *see Crow v. Wyoming Timber Products Co.,* 424 F.2d 93, 96 (10th Cir.1970) (dictum). Congress has specifically waived sovereign immunity for actions under § 7426 through the enactment of 28 U.S.C. § 1346(e). Thus to the extent that a party claiming an interest in property is aggrieved by the pendency of an existing lien, sovereign immunity is waived. *See Three M Investments, Inc. v. United States,* 781 F.2d 352, 354 (10th Cir.1986). This conclusion does not change merely because the district court exercised ancillary jurisdiction. Ancillary jurisdiction permits the district court to exercise the full range of its civil and criminal jurisdiction.

■ One of the essentials of *in rem* jurisdiction is that the property be within the court's jurisdiction at the time of suit. 4 C. Wright & A. Miller, Federal Practice & Procedure § 1070, at 270 (1969). Release or removal of the res from the control of the court ends its jurisdiction. Generally, the only exceptions to the rule are when the *res* is released accidentally, fraudulently, or improperly. *See United States v. $54,480.05 United States Currency and Other Coins,* 722 F.2d 1457, 1458 (9th Cir. 1984).

■ The Government's analysis fails to consider the fact that *in rem* and *in personam* jurisdiction may co-exist. *See Inland Credit Corp. v. M/T Bow Egret,* 552 F.2d 1148, 1152 (5th Cir.1977). Here both apply. The district court still has jurisdiction under I.R.C. § 7426(b) to enter a judgment *in personam* against the Government. Section 7426(b) grants the district court the jurisdiction to order the Government to return the seized property or its equivalent, *i.e.,* a money judgment. Moreover while the Government attorney could not waive any immunity of the United States, we note that our interpretation of § 7426(b) is consistent with representations made to the district judge:

MR. GOOD (Counsel for the County): Judge, I am curious, is there any—if I can ask for a brief stay of the order until

we see if we might be taking some kind of further action before this Court releases the funds to the I.R.S.

MR. SNOW (Counsel for Wingfield): Judge, excuse me, if I may speak to that. We're being assessed interest on a daily basis, Mr. Wingfield is, for that. We would suffer from the stay. We would ask that the order be immediately imposed.

MR. GUTHRIE (Counsel for the IRS): Besides that, Your Honor, we have a deep pocket. *We'll have the money. If they bring a successful lawsuit, we'll have enough money to give it back.*

THE COURT: Well, I'm not going to make any comments about political parties going into greater debt, *but I'll accept that.* Okay, the claim is denied. *The assurance of the federal government is that you can collect from them if you are successful in that.*

III R. 14–15 (emphasis added). It was upon this assurance by the Government that the district court denied the motion for a stay.

In sum, the case is not moot nor is jurisdiction destroyed because of distribution of the property to the Government. The power to order restitution by payment of an equivalent value remains.

### C.

### Comity

■ Boulder County further argues that the district court should have returned the property to the State district court under the general principles of comity because the State court was the first court to have possession of the seized funds and because the Government had actual notice of the State court proceedings and failed to intervene, citing *United States v. Hunt,* 513 F.2d 129 (10th Cir.1975).

*Hunt* is inapposite. There the IRS intentionally by-passed a State court proceeding following actual notice by initiating a unilateral action in federal district court when the funds in question were in the sole possession of the State district court. Here the State court did not have control or possession of the seized property, nor did the Government initiate the suit. Rather, the property was in the custody and control of the federal district court as possible evidence in a federal criminal case, and the Government, along with Boulder County and Wingfield, asserted claims to the property after Wingfield's conviction. Although we recognize the importance of "[t]he promotion of proper Federal-State relations in the interest of sound judicial administration and in further recognition of the principles of comity," *id.* at 138–39, we believe these interests would not have been promoted by the district court's refusal to adjudicate the claims to the seized property in its control.

We conclude that the district court did not err in exercising ancillary jurisdiction under *Herzfeld* and like principles to adjudicate the conflicting claims to the property in its custody or in deciding not to transfer the property to the State court.

### III

### CLAIMS OF OWNERSHIP

The controlling question is whether Wingfield had a property interest in the seized property sufficient for the federal tax lien to attach at the time the IRS assessed the tax lien and filed notices thereof. If Wingfield did have such a property interest in the seized property, then the federal tax liens attached and the IRS' claim has priority. If, on the other hand, the taxpayer-defendant had no such property interest in the seized property, then the federal tax lien could not attach.

■ A federal tax lien may attach only to the property of the person liable to pay the tax. I.R.C. § 6321; *see also* 13 Mertens Law of Federal Income Taxation § 54.52, at 208. Section 6321 provides that a federal tax lien shall be applicable to "all property and rights to the property, whether real or personal, *belonging* to such person." (Emphasis added). A federal tax lien is wholly a creature of federal law. Therefore the consequences of the lien that attach to property interests are matters of federal law. *See United States v. Rodg-*

ers, 461 U.S. 677, 683, 103 S.Ct. 2132, 2137, 76 L.Ed.2d 236 (1983) (and cases cited therein); see also Hunt, 513 F.2d at 133. However the Internal Revenue Code "creates no property rights but merely attaches consequences, federally defined, to rights created under state law...." *United States v. Bess,* 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958); see also 13 Mertens, *supra* § 54.52, at 207. Property and rights to property exist under state law; priority of federal liens depends on federal law. *See Rodgers,* 461 U.S. at 683, 103 S.Ct. at 2137; *Aquilino v. United States,* 363 U.S. 509, 512–14, 80 S.Ct. 1277, 1279–80, 4 L.Ed.2d 1365 (1960); *21 West Lancaster Corp. v. Main Line Restaurant, Inc.,* 790 F.2d 354, 356 (3d Cir.1986) (under Pennsylvania law, state liquor license did not constitute property but it had sufficient indicia of property to be subjected to federal tax lien).

 Federal law governs the priority of a tax lien against other claims to property. *United States v. Equitable Life Assurance Society,* 384 U.S. 323, 328, 86 S.Ct. 1561, 1564, 16 L.Ed.2d 593 (1966). Where Congress has not prescribed a different priority rule, see I.R.C. § 6323, the basic rule is "first in time is first in right." *See United States v. City of New Britain,* 347 U.S. 81, 85–86, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954). Therefore, a tax lien is junior to only those liens that not only attached to the asset, but also became sufficiently choate before the tax lien arose. *See id.* And choateness of a competing interest is also a matter of federal law. *See United States v. Pioneer American Insurance Co.,* 374 U.S. 84, 88–89, 83 S.Ct. 1651, 1655, 10 L.Ed.2d 770 (1963).

With respect to the property interest in question here, the Supreme Court of Colorado has responded to the following question certified to it by the federal district court:

> What is the nature and extent of the property interest, if any, retained by a person subsequent to the seizure of his property pursuant to § 16–13–303, C.R.S. 1973, as effective on June 13, 1980, but prior to judicial determination pursuant to § 16–13–307 et. seq, C.R.S.1973?

*United States v. Wilkinson,* 628 F.Supp. 29, 30 (D.Colo.1985). The Colorado Court answered the question as follows:

> We hold that a person is divested of all rights and interests in property upon its seizure under the Colorado Abatement of Public Nuisance statute (Public Nuisance statute), sections 16–13–301 to –316, 8 C.R.S. (1978 & 1983 Supp.). Therefore, our answer to the certified question is that there is no property interest retained during the period in question.

*United States v. Wilkinson (In re Interrogatories of the U.S. District Court),* 686 P.2d 790, 790–91 (Colo.1984).

It is thus arguable that Wingfield ceased to have any interest in the seized property as of November 5, 1982, the date of the seizure, and well before January 19, 1983, the date the IRS filed notices of the federal tax liens. The tax lien would thus be unenforceable because it was a lien against nothing, as was reasoned in the *Wilkinson* case. *See* 628 F.Supp. at 31.

We are not convinced that we should apply the reasoning in the *Wilkinson* opinion, see 628 F.Supp. 29, which supports the position of the County of Boulder. We adopt instead the analysis of the district court here and as explicated in *Eggleston v. Colorado,* 636 F.Supp. 1312, 1322 (D.Colo. 1986), which upholds the Government's position.

 Insofar as the Colorado Supreme Court's decision determines the nature of items forfeited pursuant to the abatement statute as property interests, it is binding on this court. However, it remains a question of federal law for us to decide whether the interest was subjected to a federal tax lien and the priority of the lien. *21 West Lancaster Corp.,* 790 F.2d at 358. Two cases have addressed situations analogous to the case before us. In *Metropolitan Dade County v. United States,* 635 F.2d 512 (5th Cir.1981), the Fifth Circuit was called upon to determine whether a delinquent taxpayer had a property interest in confiscated funds seized by the State of Florida under the authority of a specific gambling

statute. Relying on language of the statute that "no one has any property rights subject to be protected by any constitutional provision in such contraband," [2] the court held that it was the "unescapable intent of the Florida legislature ... that all contraband, including money, escheats upon seizure." [3] Moreover, in rejecting the Government's argument that the taxpayer retained a property interest in the seized contraband, the court held that "[u]nder the statute, the 'owners' of seized contraband are not 'divested' of any property rights; the legislature expressly stated that 'no one has any property rights' in seized contraband." 635 F.2d at 515. Although the Florida law provided a means for a claimant to recover seized property if he could show that the property was lawfully acquired, the court nevertheless concluded that the confiscation was not analogous to an inchoate attachment lien. *Id.*[4]

In *Rodriguez v. Escambron Development Corp.*, 740 F.2d 92 (1st Cir. 1984), the First Circuit considered whether title to Puerto Rican land acquired by civil law "acquisitive prescription" was subject to a federal tax lien against the prior record owners of the land. The plaintiffs argued that when the thirty-year period for adverse possession in Puerto Rico ran in 1975, the doctrine of relation back made them owners of the land from the time when they first took possession in 1945. *Id.* at 94–95. Under the civil law concept in Puerto Rico, "[w]hen prescription is completed the possessor is deemed to be owner, not merely from the last day of the delay, but retroactively from the moment when the prescription began to run." *Id.* at 94 (quoting 1 M. Planiol & G. Ripert, *Treatise on the Civil Law* 599 n. 2708 (La.State Law Inst. trans. 1959)). Thus the plaintiffs argued that the Government's tax lien which arose in 1963 was ineffective because through the application of the rela-

tion back doctrine they, not the delinquent taxpayers, were the owners of the land at the time.

The First Circuit rejected this argument concluding "that, under the federal tax laws, the government's tax lien passed along with ownership of the attached land." *Id.* at 100. Of particular import to the court was the fact that the right to ownership of the land was never extinguished; rather, the right passed from the taxpayers to the plaintiffs. *Id.* at 99. Thus the court distinguished those cases where the attached property right ceased to exist, leaving nothing against which the Government could assert its interests.

■ Our case more closely resembles *Rodriguez* than *Metropolitan Dade.* The Supreme Court of Colorado did state that "a person is divested of all rights and interests in property upon its seizure under the Colorado Abatement of Public Nuisance statute...." *Wilkinson*, 686 P.2d at 790. Nevertheless examination of the Colorado procedure shows that mere seizure of property does not result in retroactive divestment of the owner's rights in that property. Under *Wilkinson*, a person is divested of rights in property at the time of seizure, but this is dependent on a final order being entered. 686 P.2d at 792, 794. Thus the "owner" of seized property under Colorado law retains some interest in the property, even though he may not have the right to possession. *See Eggleston*, 636 F.Supp. at 1322. As noted below, until entry of the final forfeiture order the owner still had a right to recover his property if it was not found to be subject to forfeiture.

We feel a further comparison to *Rodriguez* is persuasive. It is true that in the instant case the seizure of Wingfield's property was an act on which forfeiture and ultimate title for the County can be established. However, this is close, we

---

**2.** 635 F.2d at 514.

**3.** 635 F.2d at 515 (footnote omitted).

**4.** We express no opinion as to whether a tax lien could attach to the taxpayer-claimant's interest (his right to recover the property) under statutes similar to that of Florida. As noted, that claim-

ant has a right to recover his property if he carries the burden of showing the property was lawfully acquired. For reasons expressed below, we find the instant case is distinguishable from *Metropolitan Dade* and the Florida procedure.

feel, to the facts in *Rodriguez*. There the taking of possession at the start of the period by the adverse possessors also was an act on which their rights could be established on completion of the required possession. Nevertheless the intervening tax lien prevailed because the final completion of the prescription period had to occur before the adverse possessors' rights were established.

■■■ Thus at the instant the tax lien attached to the seized property here, absent the use of the doctrine of relation back as it is explained in *United States v. Stowell*, 133 U.S. 1, 16–17, 10 S.Ct. 244, 247, 33 L.Ed. 555 (1890), the taxpayer Wingfield had a cognizable interest in the seized property. This must be so because if the final judgment of forfeiture by the Colorado State court had not been entered, Wingfield would have been entitled to the return of the seized property.[5] Here we cannot agree that before the final judgment of forfeiture was entered, the taxpayer had no property interest sufficient for the federal tax lien to attach. Not until that final judgment was entered was he divested of that interest in favor of the County. Here Wingfield had an interest in the seized property sufficient for the tax lien to attach until the final judgment was entered.[6]

■■■ Only through the use of the relation back doctrine can Boulder County argue that Wingfield had no property interest as of the date of seizure.[7] The district court reasoned that the doctrine of relation back under state law cannot be held to subvert the constitutional power to lay and collect taxes. *Eggleston*, 636 F.Supp. at 1323. We agree. Relation back cannot "operate to destroy the realities of the situation." *United States v. Security Trust & Savings Bank*, 340 U.S. 47, 50, 71 S.Ct. 111, 113, 95 L.Ed. 53 (1950). "The State's characterization of its liens, while good for all state purposes, does not necessarily bind this Court." *United States v. Acri*, 348 U.S. 211, 213, 75 S.Ct. 239, 241, 99 L.Ed. 264 (1955).

Here after seizure, but while Wingfield retained an interest in the property until a final forfeiture judgment, the tax lien attached. We therefore hold that as a matter of federal law governing priorities, the Government's tax lien had attached to the seized property of Wingfield before it passed to Boulder County and has priority over the County's claim.

## IV

### ESTOPPEL AND WAIVER

Boulder County further argues that the Government should be estopped from pressing its right to the funds because of governmental assurances that it would waive its claim. We disagree.

---

5. The Colorado Court of Appeals has recognized this fact in the direct appeal in Wingfield's state forfeiture proceeding. *See Colorado v. Lot 23*, 707 P.2d 1001 (Colo.Ct.App.1985), *aff'd in part and rev'd in part*, 735 P.2d 184 (Colo.1987). There the court found that of the property seized from Wingfield, the silver bars, the Canadian mint sets, and the currency found in the glass pitcher were not sufficiently shown to be "connected in any way with the drugs [seized] or other criminal activity," *id.* at 1004, and were ordered returned to Wingfield.

6. Boulder County also argues that under Colo. Rev.Stat. § 16–13–303(3) Wingfield had no property interest in the seized property. Section 16–13–303(3) provides that "no property rights shall exist" in the proceeds from the sale of drugs. Section 16–13–303(3) is analogous to the Florida provision confronted by the court in *Metropolitan Dade*. Both the Colorado provision and the Florida provision characterize the

proceeds from the sale of drugs as something in which no property rights may be held.

Here, however, the property was seized pursuant to § 16–13–303(1). Thus the funds were seized and forfeited because they were found to be contents of a building that was adjudged a class I public nuisance. There has never been a court finding that the property was proceeds from the sale of drugs. Moreover, this argument was not presented to the district court.

7. The opinion of the Supreme Court of Colorado in *Wilkinson*, 686 P.2d at 792, illustrates the reliance on relation back to establish the interest acquired by forfeiture "at the time of seizure":

The trial court's order concerning the forfeiture of the property at issue here was entered *nunc pro tunc* to the date of seizure. This order reflects its finding that personal property seized pursuant to sections 16–13–303(2) and –308(1) is forfeit at the time of seizure.

■ Estoppel is an equitable doctrine invoked to avoid injustice in particular cases. The Supreme Court has left open the question whether estoppel can never be applied against the Government. *See Heckler v. Community Health Services*, 467 U.S. 51, 60, 66, 104 S.Ct. 2218, 2224, 2227, 81 L.Ed.2d 42 (1984). If estoppel were to be applied against the Government, we have specified these requirements: (1) the party to be estopped must know the facts; (2) he must intend that his conduct will be acted upon or must so act that the party asserting the estoppel has the right to believe that it was so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury. *Lurch v. United States*, 719 F.2d 333, 341 (10th Cir.1983). We have also said that there is an additional consideration of public policy when a party seeks to estop the Government; if the Government is unable to enforce the law because of estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined. *Che-Li Shen v. Immigration and Naturalization Service*, 749 F.2d 1469, 1473-74 (10th Cir.1984),

■ Here we are not convinced that Boulder County reasonably relied to its detriment on any assurances by the IRS that it would waive its claims to the seized property. The County has not lost any rights, or changed its status, because of reliance on claimed assurances. *See Heckler*, 467 U.S. at 61-62, 104 S.Ct. at 2224-25.

The conduct of the IRS did not cause Boulder County to take or fail to take action that the County could not correct at any time. *See Schweiker v. Hansen*, 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981) (per curiam). Boulder County was able to present its argument forcefully and its counsel has provided able representation. Because of our conclusion that the County has failed to show that it reasonably relied to its detriment on assurances made by the IRS that it would waive its claim, we need not address the additional public policy considerations when a party seeks to estop the Government.

■ We hold that Boulder County is not entitled to prevail on the basis of the claimed estoppel.[8]

## V

### CONCLUSION

We hold that the district court's exercise of ancillary jurisdiction was proper. Moreover, Wingfield had an interest in the seized property sufficient for the tax lien to attach before the final order of forfeiture. Finally, the court's order that the Clerk of the Court satisfy the claim of the IRS and, if any proceeds remained, to satisfy the claim of the County of Boulder was not in error. Accordingly the judgment is

AFFIRMED.

---

**8.** We further note that the district court held that it is "very clear that where federal taxes are due, particularly where they are due as a result of obtaining monies or profits from a criminal enterprise, that the United States government is not free to waive its rights to funds...." III R. 14. Section 7122(a) provides discretionary authority to the Secretary of the Treasury to compromise any civil or criminal case arising under the internal revenue laws before the case is referred to the Department of Justice for defense or prosecution. After the case has been referred to the Department of Justice, only the Attorney General or his delegate may compromise the case. *See* I.R.C. § 7122(a); *see also* 3 Mertens (Code Commentary), *supra* § 7122:1, at 74-3 to 74-4.

Even assuming, *arguendo*, that IRS attorneys represented that the IRS would waive any claim to the seized property, the IRS attorneys were

not shown to have authority to compromise or waive a claim of the United States in these circumstances. *See* I.R.C. § 7122(a); 26 C.F.R. § 301.7122(a). Agents of the Government "who have no authority at all to dispose of Government property cannot by their conduct cause the Government to lose its valuable rights by their acquiesence, laches, or failure to act." *United States v. California*, 332 U.S. 19, 40, 67 S.Ct. 1658, 1669, 91 L.Ed. 1889 (1947); *see also California ex rel. State Lands Comm'n v. United States*, 457 U.S. 273, 276 n. 4, 102 S.Ct. 2432, 2434 n. 4, 73 L.Ed.2d 1 (1982). Moreover, compromises are required to be in writing. *See* 26 C.F.R. § 301.7122(d); *see also* 3 Mertens (Code Commentary) *supra*, § 7122:3, at 74-5 to 74-6. Here no written waiver is said to have been made; rather, Boulder County relies exclusively on alleged *oral* assurances by IRS attorneys. III R. 7.