**Thomas BENSON, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civil Action No. 95–D–2125.**

United States District Court,
D. Colorado.

Aug. 21, 1996.

James David Hopkins, Denver, CO, for Plaintiff.

William Pharo, Assistant U.S. Attorney, Denver, CO, Joel J. Roesner, U.S. Dept. of Justice, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

DANIEL, District Judge.

## I. INTRODUCTION

This matter comes before the Court as a result of the cross motions for summary judgment filed by the parties. The Court, having reviewed the motions for summary judgment, the responses and replies thereto, the entire file and the relevant case law, DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's motion for summary judgment for the reasons discussed below. As I informed counsel at the August 19, 1996 conference, I regret that controlling case and statutory precedent leave me with no alternative but to grant the motion. As the facts disclose, Plaintiff acted in good faith, was misled by the government and may have prevailed on his claim but for the extraordinary powers that are possessed by the Internal Revenue Service.

## II. FACTUAL BACKGROUND

The key facts are undisputed. Plaintiff Thomas Benson ("Benson") failed to file personal income tax returns for the 1980, 1981 and 1982 tax years. On November 27, 1985, a statutory notice of deficiency was issued to Benson which determined deficiencies and additions to tax for all three years. On February 28, 1986, Benson filed a petition with the United States Tax Court contesting the claimed deficiencies. On May 11, 1987, a decision was issued which determined deficiencies for the taxable years 1980, 1981 and 1982 in the amounts of $3,076.00, $2,010.00, and $5,699.00, respectively, not including penalties or accrued interest. These taxes were assessed against Benson and the case was transferred to the Internal Revenue Service's ("IRS") Collection Division. Thereafter, Benson entered into a payroll deduction agreement beginning May 18, 1988 whereby Benson paid $400.00 per month on his total federal income tax liability of $29,636.00 from July of 1988 until June of 1993. I calculate that the amount paid by Benson totalled approximately $24,000.00.

On July 15, 1993, Benson visited the office of the District Director of the IRS and requested a payoff balance for his unpaid tax liability. As of that date, the deficiencies, penalties and accrued interest for the 1980 and the 1981 tax years had been fully paid, and the remaining balance owed involved only the 1982 liability. In writing on the same date, the Taxpayer Service Division sent Benson a letter, Form 1721B(D), which represented that the final payoff balance on his 1982 account was $1,892.93 if received by August 6, 1993. This amount, it later turned out, was incorrect because the IRS employee who processed the request failed to update the interest that was due on the 1982 account.

Nevertheless, it is undisputed that Benson made a payment of $1,892.93 by the proscribed deadline and indicated on the check that it was for "TOTAL PAYOFF 1982". The IRS cashed this check and on or about August 2, 1993, sent Benson a letter which incorrectly stated that the balance due for the 1982 tax period had been fully paid. A Notice of Tax Lien was released by the IRS with respect to the 1982 tax liability, and on August 4, a release of lien was published in the local newspaper.

In claimed reliance on this release and with the extra money that Benson had as a result, Benson alleges that he obtained new financing on his family home and paid his mother back for the loan. Further, he claims to have purchased a motor vehicle, and made plans to have a dentist perform dental work on his son and wife. Finally, Benson claims that he made plans for opening a retirement savings account.

In September, 1993, Benson was informed that the IRS had made a mistake and that he still owed unpaid interest. On September 20, 1993, the IRS assessed interest in the amount of $9,603.07 with respect to the Plaintiff's tax liability. On December 30, 1993, a final notice and demand for payment and notice of intention to levy was mailed to Benson from the IRS' collection department. In March, 1994, Benson requested that the IRS review the case and not levy on his property, which request was denied in a letter issued March 25, 1994. On April 23, 1994, Benson paid the balance due plus addi-

tional interest in the total amount of $9996.64.

On August 31, 1994, Benson filed an administrative claim for a refund of the paid interest. Benson's claim was considered by the IRS Examination Division as a request for abatement of interest. Due to the ministerial error of the IRS in giving Benson an incorrect payoff figure on July 15, 1993, the Examination Division determined that $484.32 of the interest paid should be abated, which represented the interest paid from July 15, 1993 to December 30, 1993, the date he received final notice and demand for payment. Benson disagreed with the partial allowance and was transferred to the IRS Appeals Division. On or about March 30, 1995, the Appeals Division sustained the Examination Division's position and issued a partial claim disallowance letter along with a refund of $484.32. In connection therewith, Benson was charged a $10.00 administrative charge for costs.

Thereafter, Benson commenced this suit. As a result of the additional interest that Benson was required to pay, Benson claims that his wife has not yet had the dental work she needs and Benson was not able to start a savings plan. Further, Benson claims that he and his family were required to make adjustments to their budget to pay for the extra expenses they incurred in reliance on the Defendant.

## III. ANALYSIS

### A. Summary Judgment Standards

In considering these motions, the Court is mindful that "summary judgment is a drastic remedy" and should be awarded with care. *Conaway v. Smith*, 853 F.2d 789, 792 n. 4 (10th Cir.1988). Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The initial burden is on the moving party. The moving party must allege an absence of evidence to support the opposing party's case and identify supporting portions

of the record. *Id.* at 323, 106 S.Ct. at 2552–53.

Once the movant has made an initial showing, the burden of proof shifts to the opposing party. *Anderson v. Dept. of Health and Human Servs.*, 907 F.2d 936, 947 (10th Cir.1990). The nonmovant must go beyond the pleadings and designate specific facts showing that there are genuine issues of fact for trial. *Allen v. Dayco Prods., Inc.*, 758 F.Supp. 630, 632 (D.Colo.1990). A genuine issue of material fact exists only where there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Mares v. Conagra Poultry Co.*, 773 F.Supp. 248, 251 (D.Colo.1991), *aff'd.*, 971 F.2d 492 (1992). All factual disputes and inferences must be drawn in favor of the nonmoving party. *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir.1980). Summary judgment should, however, be granted if the pretrial evidence is merely colorable or is not significantly probative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

### B. Contract Claim

Benson argues that he entered into a contract with Defendant through the payroll deduction agreement and the later written letters concerning the proper amount due under the 1982 agreement. Benson claims that by demanding more amounts, the IRS has breached its contract with Benson. It is undisputed, however, that the alleged contract of settlement did not comply with Sections 7121 and 7122 of the Internal Revenue Code, 26 U.S.C. §§ 7121 and 7122. These statutory sections are the exclusive procedures for compromising tax liabilities. *Uinta Livestock Corp. v. United States*, 355 F.2d 761, 765 (10th Cir.1966); *Delohery v. IRS, Dept. of Treasury, United States*, 843 F.Supp. 666, 669 (D.Colo.1994).

The Supreme Court explained this as follows:

We think that Congress intended by the statute to prescribe the exclusive method by which tax cases could be compromised requiring therefor the concurrence of the Commissioner and the Secretary, and prescribing the formality with which, as a

matter of public concern, it should be attested in the files of the Commissioner's office; and did not intend to intrust the final settlement of such matters to the informal action of subordinate officials in the Bureau. When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode. *Botany Worsted Mills v. United States,* 278 U.S. 282, 288–89, 49 S.Ct. 129, 131–32, 73 L.Ed. 379 (1929). Courts that have applied this rule to cases with facts similar to the instant case include *Dorl v. Commissioner,* 507 F.2d 406, 407 (2nd Cir.1974) (letter from IRS received by taxpayer informing her that if she paid deficiency resulting from mathematical error she would have paid taxes in full was not a closing agreement binding on the IRS and did not preclude additional deficiency assessment, especially where the revenue officer who sent the letter had no authority to execute a formal closing agreement); and *Klein v. Commissioner,* 899 F.2d 1149, 1153 (11th Cir.1990) (IRS letters purporting to constitute settlement of tax liability did not constitute binding contract because closing agreement was not executed, even if letters relied on by taxpayer were held to be apparent settlement, IRS could not be bound because letters were not signed by both parties and agent signing one of letters was without authority to formally settle taxpayer's liability).

In the case at hand, it is undisputed that the alleged contract compromising Benson's claim did not comply with either Section 7121 or 7122 of the Internal Revenue Code. This is because, among other reasons, it was not approved by the Secretary of the Treasury or a delegate of the Secretary (26 U.S.C. § 7121(a)); and (ii) a closing agreement must be submitted on a form prescribed by the IRS. 26 C.F.R. § 301.7122–1(d). In addition, the employee of the District Director did not have the authority to enter into a compromise agreement. Accordingly, summary judgment in favor of the Defendant is GRANTED as to Benson's first claim for relief for breach of contract.[1]

## C. Equitable Estoppel

▬ I also find that summary judgment is appropriate as to Benson's equitable estoppel claim. The Supreme Court has left open the question whether equitable estoppel may ever be invoked against the government. *Heckler v. Community Health Services,* 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984). If there is such a claim, it is clear that the government may not be estopped on the same terms as any other litigant. *Id.* The Tenth Circuit invokes the doctrine of equitable estoppel against the government with great reluctance. *Emery Mining Corp. v. Secretary of Labor,* 744 F.2d 1411, 1416 (10th Cir.1984).

▬ The following elements must be met in order to establish an estoppel claim: "(1) the party to be estopped must know the facts; (2) he must intend that his conduct will be acted upon or must so act that the party asserting the estoppel has the right to believe that it was so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his detriment." *United States v. Wingfield,* 822 F.2d 1466, 1476 (10th Cir.1987). Further, "there is an additional consideration of public policy when a party seeks to estop the Government; if the Government is unable to enforce the law because of estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined." *Id.; see also United States v. Browning,* 630 F.2d 694, 702 (10th Cir.1980), *cert. denied,* 451 U.S. 988, 101 S.Ct. 2324, 68 L.Ed.2d 846 (1981) (the only circumstances justifying use of the doctrine are those which add up to the conclusion that it does not interfere with underlying governmental policies or unduly undermine the correct enforcement of a particular law or regulation").

---

1. I note that a key case relied on by Benson is distinguishable on its facts and actually supports my ruling. The Tenth Circuit in *Anthony v. United States,* 987 F.2d 670, 673 (10th Cir.1993), specifically recognized the rule that informal settlement agreements are precluded by sections 7121 and 7122 of the Internal Revenue Code. However, it created an exception to this rule for the sole reason that the agreement was issued as an official decision of the United States Tax Court.

Cases that are factually similar to the instant proceeding have concluded that the IRS is not estopped from collecting amounts that were compromised by an agreement with the IRS which did not comply with the regulations of the Internal Revenue Code. Thus, in *Delohery,* a taxpayer claimed that equitable estoppel was appropriate against the IRS with relation to certain quarterly taxes that the taxpayer was forced to pay on the basis that a revenue officer of the Office of the District Director had previously represented that he would make adjustments to the interest and penalties to cover this quarterly tax liability.

This Court rejected the argument, holding that the taxpayer's reliance on the revenue officer's representation was unreasonable for two reasons:

> First, Section 7122 provides that only the Secretary or his delegate may compromise a tax liability. In *Browning,* the Tenth Circuit held that 'it is fundamental that the United States is not estopped by representations made by an agent without authority to bind the government in a transaction.' 630 F.2d at 702.... Second, as mentioned above, the applicable treasury regulations require that an offer of compromise and an acceptance be in writing.... In dealing with the government, Delohery is charged with knowledge of applicable statutes and regulations. Thus, Delohery should have known that Scott's oral representation of compromise was not binding and, therefore, I conclude that his reliance on the agreement was unreasonable as a matter of law.

*Id.* at 669 (internal citations omitted).

Further, the court rejected Delohery's argument that he had relied to his detriment upon the IRS agent's representation by having to sell his business, that his credit relationship with his bank was damaged, that he had been threatened with foreclosure and that he was required to enter into an unfavorable arrangement with the bank to forestall collection efforts. The court concluded that this did not create a genuine issue of fact as to the reliance factor of estoppel because Delohery had not lost any legal right, either vested or contingent, or suffered any adverse change in his status, since it is undisputed that he owed the tax. *Id.* at 670. Finally, the court concluded that the facts of the case did not warrant a finding of affirmative misconduct on the part of the government, an element of estoppel required by many circuits. *Id.*

The *Delohery* opinion relied on the holding of the Supreme Court in *Heckler.* In *Heckler,* a health care provider sued an administrative agency of the government for recoupment of overpayments made under medicare cost reimbursement procedures on the basis that it had requested the reimbursements in reliance on an intermediary of the agency who told the provider that the requested costs were reimbursable. The Supreme Court held that equitable estoppel was inapplicable against the agency because the provider received a benefit that it should never have gotten in the first place, stating, "[w]hen a private party is deprived of something to which it is entitled of right, it has surely suffered a detrimental change in its position. Here, [the provider] lost no rights but merely was induced to do something which could be corrected at a later time." *Id.* at 62, 104 S.Ct. at 2225.

Further, as to the provider's argument that it was adversely affected by having to repay the money that it thought it was entitled to because its operations would be curtailed, the Supreme Court in *Heckler* stated, "[c]urtailment of operations does not justify an estoppel when—by [the provider's] own account—the expansion of its operation was achieved through unlawful access to governmental funds." *Id.* at 62–63, 104 S.Ct. at 2225. Finally, the Supreme Court held that estoppel was also inappropriate because reliance was not justified since the provider was deemed to know the regulations and thus know that it accepted advice from an entity that did not have authority to bind the agency. *Id.* at 62–65, 104 S.Ct. at 2225–27; *see also United States v. Guy,* 978 F.2d 934 (6th Cir.1992); *Kennedy v. United States,* 965 F.2d 413 (7th Cir.1992); *Wingfield,* 822 F.2d at 1476; *Dorl,* 507 F.2d at 407.

Based on the foregoing authority, I find that judgment is appropriate as a matter of law as to the equitable estoppel claim. Any

reliance of Benson was unreasonable since he was not deprived of any legal right to which he was entitled. Moreover, his reliance was not justified since the regulations required that he comply with Sections 7121 and 7122 of the Internal Revenue Code of which he is deemed to have notice, and because he negotiated a settlement with an employee of the IRS that did not have authority to compromise the IRS' claim. Summary judgment in favor of Defendant is thus GRANTED on Benson's second claim for relief for equitable estoppel.

## IV. CONCLUSION

Based upon the foregoing, it is

ORDERED that Plaintiff's Motion for Summary Judgment is DENIED. It is

FURTHER ORDERED that Defendant's Motion for Summary Judgment is GRANTED. It is

FURTHER ORDERED that the trial set to commence on September 9, 1996 is VACATED.