**Robert B. ROGERS, Successor Executor for the Estate of Ewing M. Kauffman, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 97–2666–JWL.

United States District Court, D. Kansas.

Nov. 18, 1999.

---

Kelley D. Sears, M. Kevin Underhill, Stanley P. Weiner, Susan A. Berson, Eric T. Nikkelson, Sylvan Siegler, Shook, Hardy & Bacon, L.L.P., Kansas City, MO, for plaintiffs.

Seth G. Heald, Charles P. Hurley, U.S. Dept. of Justice, Office of Special Litigation, Tax Division, Washington, DC, for defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This tax refund suit involves the Kansas City Royals Major League Baseball team, its former owner Ewing Marion Kauffman, now deceased, and former part-owner Avron B. Fogelman. The suit centers around a $34 million bad debt deduction taken by the Royals on a purported loan to Mr. Fogelman and passed through to the tax return of Mr. and Mrs. Kauffman. On June 10, 1999, the court issued a Memorandum and Order which determined that the purported loan was actually a sale or redemption of Mr. Fogelman's Royals interest on July 31, 1990 (Doc. 132). The court ordered the parties to notify it of any matters identified in the Final Pretrial Order which remained at issue. Accordingly, plaintiffs informed the court that the possibility of plaintiffs receiving a tax refund remained.

Now, the matter is before the court on plaintiffs' motion for summary judgment (Doc. 135). Also pending is defendant's motion to strike the affidavit of George P. "Rusty" Jandl or, in the alternative, for leave to depose Mr. Jandl and to retain its own expert tax calculation witness (Doc. 139). Defendant further moves to strike documents offered by plaintiffs in supplementation of their summary judgment motion (Doc. 146). For the reasons set forth below, plaintiffs' motion for summary judgment is denied in part, granted in part, and taken under advisement in part. Partial summary judgment is entered for defendant and defendant's motions to strike are taken under advisement.

## I. Background

The facts of this case are substantially set forth in the court's June 10, 1999 order. Therefore, only facts applicable to the present proceeding are set forth here. This dispute rises out of an agreement executed on July 31, 1990 between Mr. Kauffman, the Royals, and Mr. Fogelman. The parties characterized the agreement as representing a $34 million loan from Mr. Kauffman to the Royals and a corresponding $34 million nonrecourse loan from the Royals to Mr. Fogelman. As a part of the transaction, Mr. Fogelman granted the Royals an option to purchase his 50% ownership interest in the Royals, as well as his option to purchase the remainder of the Royals stock, for a price equal to the outstanding balance of his alleged Royals loan. Although Mr. Fogelman also gave up many of the benefits of stock ownership during the period of the alleged loan, the parties agreed that he would maintain the right to enjoy the tax benefits of any losses the Royals might pass through to him. Mr. Fogelman "defaulted" on the purported loan on January 3, 1991, the nonrecourse note's due date. On that same day, Mr. Fogelman signed a waiver and consent in lieu of foreclosure in which Mr. Fogelman agreed to the Royals retaining his Royals stock and option. The parties also agreed that the fair market value of the collateral on January 3, 1991 was substantially below the face amount of the purported loan and that the Royals could not collect any deficiency from Mr. Fogelman because the note he signed was nonrecourse. Asserting that the collateral it received on January 3, 1991 had no value, the Royals deducted the full amount of the alleged loan ($34,000,-000), plus interest ($2,023,001), as a bad debt deduction pursuant to I.R.C. § 166 in 1991. The Royals, as an S corporation, passed the bad debt loss through to Mr. Kauffman, who utilized the loss on his 1991 joint tax return with Mrs. Kauffman.

From early 1992 until May, 1995, the Internal Revenue Service (IRS) audited the Kauffman's federal income tax returns for the tax years 1989, 1990, and 1991. During the course of an audit into the Kauffman's 1991 bad debt deduction, a revenue agent determined that the substance of the 1990 Fogelman transaction was that of a redemption of Mr. Fogel-

man's Royals stock, not a loan. On July 18, 1995, the IRS issued a notice of deficiency to plaintiffs for the 1991 tax year, reflecting the disallowance of the bad debt deduction. Plaintiffs paid the deficiency on August 18, 1995. Thereafter, on January 17, 1996, plaintiffs submitted a refund claim challenging the disallowance of the bad debt deduction and asserting as the sole ground for refund I.R.C. § 166's allowance for a deduction for any debt which becomes worthless. On June 19, 1996, plaintiffs sent a letter to the IRS asserting their alternative position that they were entitled to a deduction as a trade or business expense under I.R.C. § 162. The IRS determined that plaintiffs' refund claim was not allowed on either ground. Thereafter, plaintiffs filed their original complaint in this matter, again asserting a bad debt deduction or, alternatively, an ordinary and necessary business expense as the ground for refund.

During the course of litigation, on March 13, 1998, plaintiffs submitted to the IRS six amended tax returns for the Royals and corresponding returns for the Kauffmans, relating to tax years 1990 and 1991. Only one of the claims listed a ground for refund in the event that the court might find that the Royals redeemed Mr. Fogelman's stock, rather than provided him with a loan. This claim asserted that the Royals are "entitled to a refund of taxes based on certain recognized interest. Previously recognized interest income from 7/31/90 to 12/31/90 ($2,023,001) is removed from [the Royals'] 1990 income, with the corresponding 1990 flow-through removal of interest income ($1,011,501) to the Kauffmans as 50% shareholders." On November 2, 1998, plaintiffs filed an amended complaint incorporating this alternative claim. Plaintiffs, however, asserted no claim for refund based on the specific ground that, should the court find the Fogelman transaction a redemption of Royals stock, losses attributed to Mr. Fogelman from July 31, 1990 until December 31, 1990 should be reallocated to Mr. Kauffman as the owner of the stock. Plaintiffs did not make specific reference to reallocation of losses from Mr.

Fogelman to Mr. Kauffman until the Final Pretrial Order, which the court approved on April 2, 1999.

On June 10, 1999, the court issued a Memorandum and Order which determined that the purported loan to Mr. Fogelman was actually a sale or redemption of Mr. Fogelman's Royals stock (Doc. 132). The court ordered the parties to notify the court of any issues that remained in the case by June 17, 1999. Prior to June 17, 1999, defense counsel informed counsel for plaintiffs that defendant would not assert the statute of limitations as a bar to a refund claim by plaintiffs arising from the court's determination that the Fogelman transaction was a sale or redemption. In a June 17, 1999 status conference with the court, plaintiffs' counsel informed the court that, as a result of the court's order, the Royals should not have treated Mr. Fogelman as a shareholder after July 31, 1990. Therefore, the Royals should have allocated to Mr. Kauffman net operating losses which instead it had passed through to Mr. Fogelman. Additionally, plaintiffs' counsel claimed that the Royals should not have recognized interest income on the "loan," and thus the Royals had a greater operating loss that it should have passed through to Mr. Kauffman. Plaintiffs' counsel stated that he and counsel for defendant had agreed that, as a result of the court's characterization of the transaction as a sale, plaintiffs were entitled to a refund of overpaid taxes. Plaintiffs' counsel further informed the court that plaintiffs' accountants were calculating the amount of refunds owed for defendant's review. Counsel for defendant told the court that defendant agreed that plaintiffs were owed a refund and that defendant would need approximately one month to review plaintiffs' accountants' calculations of the amount of refund owed. The issue of the statute of limitations did not arise in the status conference.

Following the status conference, plaintiffs sent to defendant amended tax returns for the years 1990 and 1991, pre-

pared by plaintiffs' accountants. Plaintiffs' counsel called defendant's counsel and told him that an amended return for the 1993 tax year would be forthcoming. Thereafter, defendant's counsel informed plaintiffs' counsel that defendant's initial position was wrong and that defendant would be asserting the statute of limitations. The statute of limitations issue was not asserted by defendant in the Final Pretrial Order of this case. As a result of defendant's change in position, plaintiffs filed the summary judgment motion currently before the court, asking the court to find that plaintiffs are entitled to a tax refund based on the court's determination that the July 31, 1990 transaction was a sale or redemption of Mr. Fogelman's Royals stock.

## II. Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). Summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to

secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1). Furthermore, the court may enter summary judgment sua sponte "when the following conditions are met: (1) there is no dispute of material fact; (2) the losing party has had an adequate opportunity to address the issues involved." *David v. City & County of Denver*, 101 F.3d 1344, 1359 (10th Cir.1996) (citing *Celotex*, 477 U.S. at 326, 106 S.Ct. 2548).[1]

## III. Discussion

Plaintiffs assert that one issue remains alive in this suit following the court's June 10, 1999 order: whether plaintiffs are entitled to a tax refund for tax years 1990, 1991, and 1993 because, in characterizing the Fogelman transaction as a "loan," they improperly included interest from the "loan" as income and because they allocated 50% of the Royals net operating losses for 1990 to Mr. Fogelman as a 50% shareholder, rather than to plaintiffs as the true owners of Mr. Fogelman's stock.[2] Plaintiffs claim that they are entitled to such a refund and seek summary judgment to that effect. As discussed below, defendant takes the contrary position that a refund on these grounds is barred by the applicable statute of limitations, and, as a result, the court lacks subject matter jurisdiction over plaintiffs' remaining refund claims. Plaintiffs respond that the statute of limitations cannot properly be raised for one or more of the following reasons: 1) defendant waived this defense by not placing it

---

1. Only plaintiffs have moved for summary judgment. The court, however, may grant summary judgment for defendant sua sponte. *See David v. City & County of Denver*, 101 F.3d 1344, 1359 (10th Cir.1996) (citing *Celotex*, 477 U.S. at 326, 106 S.Ct. 2548).

2. Plaintiffs preserved this issue in paragraph p of the Pretrial Order:

   ALTERNATIVE CLAIM FOR LOSS PASS THROUGH. If the transaction is deemed to be a sale of Mr. Fogelman's interest in the Royals, defendant owes to plaintiff a refund of taxes in the amount of the over-

payment of taxes in 1990 and 1991. The Royals would be entitled to remove from income the amount of interest that it recognized in tax year 1990 and to reallocate to Mr. Kauffman for 1990 and 1991 net operating losses that it initially allocated to Mr. Fogelman.

The court notes that plaintiffs did not preserve a refund for tax year 1993 based on the reallocation of net operating losses to Mr. Kauffman, however, the court's decision today—not to allow the reallocation of losses at all—makes this issue irrelevant.

in the Final Pretrial Order; 2) defendant's counsel made representations to the court and to plaintiffs' counsel that defendant would not raise the time bar and defendant should therefore be estopped from doing so now; and/or 3) the parties reached a settlement in which defendant agreed not to raise the issue. In the alternative, plaintiffs argue that notwithstanding the running of the statute of limitations they may recover under the doctrine of equitable recoupment or under federal mitigation statutes. For the reasons below, the court finds that the statute of limitations can properly be raised by defendant, that the mitigation statutes do not apply, and that the doctrine of equitable recoupment allows plaintiffs to receive a tax refund for recognized interest income arising from the Fogelman "loan," but does not allow plaintiffs to recover a refund based on a purported reallocation of loss from Mr. Fogelman to Mr. Kauffman.

## A. Statute of Limitations and Subject Matter Jurisdiction

Defendant asserts that plaintiffs' request for refund on the grounds of the erroneous inclusion as income interest earned on the purported "loan" and on the reallocation of net operating losses from Mr. Fogelman to Mr. Kauffman is barred by the statute of limitations because plaintiffs failed to file timely administrative claims for refund on these grounds. As a result, defendant argues, the court lacks subject matter jurisdiction over plaintiffs' remaining claims. Plaintiffs, on the other hand, argue that their timely filed claim requesting a refund for tax year 1991 based on the government's disallowance of the bad debt deduction was sufficient to confer subject matter jurisdiction because it listed enough facts for the government

to conduct an investigation of whether plaintiffs were due a refund in connection with the Fogelman transaction. In the alternative, plaintiffs urge that their timely refund claim was an informal claim for refund on the currently asserted grounds.[3] The court disagrees with plaintiffs on both accounts and finds that the court's jurisdiction is limited.

A number of federal tax statutes and regulations direct the court's decision. First, section 7422(a) of the Internal Revenue Code (IRC) provides "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund or credit has been duly filed with the Secretary." Second, section 6511(a) of the IRC limits the time in which taxpayers may file a refund claim with the IRS: "Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later . . . ."[4] Finally, Treasury Regulation § 301.6402-2(b) requires that the claim for refund "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." Interpreting these rules, the Tenth Circuit recently set forth the jurisdictional requirement for a court to maintain a tax refund suit:

> Under these rules, if the taxpayer does not adequately raise an issue at the administrative level, the courts have no jurisdiction to consider the issue in a later suit for refund. These require-

---

**3.** Plaintiffs also assert that defendant changed its position at the litigation stage of this dispute; the IRS revenue agent's position that Mr. Fogelman's stock was redeemed in 1991 differed from defendant's position in litigation that a sale of the stock occurred in 1990. The court finds this change in position irrelevant, however, because plaintiffs should have been on notice to file their current grounds for

refund as an alternative to seeking a bad debt deduction regardless of the year in which the court were to find that a sale had taken place.

**4.** Although section 6402(a) of the IRC allows the IRS to credit a taxpayer for overpayments made by the taxpayer, it also requires that such credit be "within the applicable period of limitations."

ments serve to apprise the Internal Revenue Service of the nature of the claim and its underlying facts, so that it can make a thorough administrative investigation and determination, correct any errors, and limit the scope of any ensuing litigation to those issues which have been examined and which [it] is willing to defend.... [I]t is not enough that in some roundabout way the facts supporting the claim may have reached the attention of the Internal Revenue Service.

*True v. United States,* 190 F.3d 1165, 1171–72, 1173 (10th Cir.1999) (citations and internal quotations omitted). The Tenth Circuit has also recognized that "[t]hese rules are nonwaivable jurisdictional requirements." *In re Graham,* 981 F.2d 1135, 1138 (10th Cir.1992); *see also United States v. Dalm,* 494 U.S. 596, 601–02, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990).

■ In the present case, plaintiffs paid the tax deficiency arising from the IRS's disallowance of the 1991 bad debt deduction on August 18, 1995. In accordance with IRC § 6511(a), plaintiffs had until August 18, 1997 to file a claim for refund of these taxes. Such a refund was required to have set forth "in detail" each ground upon which it was based and facts asserting the "exact basis" for the claim. Treas.Reg. § 301.6402–2(b). Prior to August 18, 1997, the only two grounds on which plaintiffs requested a refund from the IRS were that the Fogelman transaction was a loan entitling plaintiffs to a bad debt deduction or, in the alternative, to a deduction as a trade or business expense. Plaintiffs assert that these claims set forth facts "sufficient to put the government on notice that plaintiffs expected a refund in relation to the Fogelman transaction." Pl's

Reply at 13 (Doc. 152). While plaintiffs may be correct, their claims did not set forth in detail the *grounds* upon which they now seek a refund in relation to the transaction. As noted in *True,* it is not enough that the IRS had before it sufficient facts in support of plaintiffs' present claims if the IRS was not apprised of the specific grounds upon which plaintiffs seek a refund.[5] Accordingly, the court finds that plaintiffs failed to file a timely refund claim based on the grounds which they now assert.

■ Plaintiffs' argument that their timely 1991 bad debt deduction claim for refund was an informal claim for refund on the currently asserted grounds is also misplaced. The rule regarding informal refund claims is that "a notice fairly advising the Commissioner of the nature of the taxpayer's claim, which the Commissioner could reject because too general or because it does not comply with formal requirements of the statute and regulations, will nevertheless be treated as a claim where formal defects and lack of specificity have been remedied by amendment filed after the lapse of the statutory period." *United States v. Kales,* 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132 (1941). To begin with, the court notes that plaintiffs' argument could only apply to allow a refund of taxes which plaintiffs paid on the interest received on the purported loan to Mr. Fogelman. Plaintiffs filed an amended, though untimely, claim on this ground on March 13, 1998. Plaintiffs have never filed an amended administrative claim for refund on the ground that some of the Royals' net operating loss in 1990 should be reallocated from Mr. Fogelman to Mr. Kauffman. Even on the ground that inter-

---

5. Plaintiffs filed an amended tax return on March 13, 1998, arguing that plaintiffs are entitled to a refund of taxes based on interest income recognized from the Fogelman transaction should the court find that the Royals redeemed Mr. Fogelman's stock. This claim, filed more than two years from the time plaintiffs paid the taxes at issue, was untimely. Furthermore, plaintiffs have never filed an administrative claim on the ground that losses attributed to Mr. Fogelman from July 31, 1990 until December 31, 1990 should be reallocated to Mr. Kauffman as the owner of the stock. Plaintiffs did not make reference to reallocation of losses from Mr. Fogelman to Mr. Kauffman until the Final Pretrial Order, which the court approved on April 2, 1999.

est arising from the Fogelman transaction was improperly characterized by plaintiffs, however, the court is not persuaded to treat the timely bad debt deduction claim for refund as an informal claim.

Plaintiffs rely on *United States v. Kales,* 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132 (1941) in support of their informal claim argument. In *Kales,* the IRS issued a jeopardy deficiency assessment against the taxpayer on the ground that she had overstated the value of stock sold. *Id.* at 189, 62 S.Ct. 214. Within the statute of limitations, the taxpayer filed a written letter with the IRS, protesting the assessment and, alternatively, claiming that the IRS had originally undervalued the stock such that she was entitled to a refund. *Id.* at 190–91, 62 S.Ct. 214. The Court ruled that, although the letter did not comply with the formal requirements of the statutes or regulations, "the Commissioner could have been left in no doubt that she was setting forth her right to a refund.... [S]he asserted that the stock had been undervalued and in consequence of the undervaluation she had a 'right to a refund of said tax to the extent of such excess.'" *Id.* at 195, 62 S.Ct. 214. As a result, the Court held that the taxpayer's refund claim was timely. Unlike the informal letter in *Kales,* however, the document which plaintiffs put forth as an informal claim does not indicate to the IRS plaintiffs' presently asserted grounds for refund, nor even advise the IRS of the correct nature of plaintiffs' claim. Rather, plaintiffs' 1991 refund claim alerted the IRS, in clear language, to the fact that plaintiffs claimed a refund only on the ground of bad debt loss. The court does not believe that a claim asserting a separate ground for refund is the type of document which the Supreme Court intended to be characterized as an informal claim for a refund based on a different ground.[6] *See United States v.*

*Henry Prentiss Co., Inc.,* 288 U.S. 73, 53 S.Ct. 283, 77 L.Ed. 626 (1933) (holding that a claim specifying as the ground for relief the necessity for a special assessment by reason of anomalous conditions in the taxpayer's business could not be turned by amendment into a claim for the revision of an assessment by increasing the value of real estate included in invested capital). "The basic underlying principle [of a valid informal refund claim] is the necessity to put the Commissioner on notice of what the taxpayer is claiming...." *Newton v. United States,* 143 Ct.Cl. 293, 163 F.Supp. 614, 619 (1958). The court believes that in this case the IRS was not put on notice of plaintiffs' current claims for refund by plaintiffs' original claim for refund for a bad debt deduction. Accordingly, the court finds that the statute of limitations presents a bar to the court's jurisdiction over plaintiffs' present claims.

## B. Preservation of the Defense

Plaintiffs urge the court not to consider the statute of limitations because, according to plaintiffs, defendants have failed to preserve this defense in at least three ways: 1) by not placing it in the Final Pretrial Order, such that it was waived; 2) by making representations to the court and to plaintiffs' counsel that it would not raise the time bar, such that defendant should be estopped from doing so now; and 3) by reaching a settlement with plaintiffs in which defendant agreed not to raise the defense. As discussed below, the court disagrees with each of plaintiffs' arguments and finds that lack of subject matter jurisdiction is an issue which the court should rightly consider.

### 1. Waiver

Plaintiffs' first argument against application of the statute of limitations is

---

6. If plaintiffs' original claim had been very general, not specifying a specific ground for refund, plaintiffs' argument here would be more convincing. In *United States v. Memphis Cotton Oil Co.,* 288 U.S. 62, 71, 53 S.Ct. 278, 77 L.Ed. 619 (1933), the Supreme Court

held that a general claim for refund is subject to amendment until final rejection by the IRS, irrespective of the running of the statute of limitations. Plaintiffs' original claim, however, set forth a distinct ground for refund.

that defendants waived this defense by not including it in the Final Pretrial Order. As discussed under Section III.A, the filing of a timely claim for refund, setting forth the specific ground upon which a refund is sought, is a prerequisite to the court's subject matter jurisdiction. The law is clear that "defects in subject-matter jurisdiction can never be waived." *Franklin Savings Corp. v. United States,* 180 F.3d 1124, 1129 (10th Cir.1999); Fed. R.Civ.P. 12(h)(3). Although professional courtesy may have mandated alerting the court and plaintiffs to this defense in the Final Pretrial Order, the court may not now prohibit defendant from asserting the court's lack of subject matter jurisdiction. The court finds that defendant has not waived the statute of limitations defense because to do so is impossible.

### 2. Estoppel

Second, plaintiffs argue that equity requires the court to estop defendant from raising the statute of limitations bar. Following the court's June 10, 1999 order, defense counsel represented to plaintiffs' counsel that defendant would not assert the statute of limitations to bar plaintiffs' refund claim.[7] In the June 17, 1999 status conference with the court, defense counsel informed the court that he agreed with plaintiffs' contention that plaintiffs were entitled to a refund. Defense counsel didn't give so much as a hint that defendant would attempt to block plaintiffs' refund by asserting the statute of limitations. Plaintiffs claim that to instill a "minimum standard of decency, honor, and reliability in [citizen's] dealings with their government," the court must estop defendant from acting contrary to the representations that defendant made to the court. Pl's Memo. in Support (Doc. 136) at 19, citing *Heckler v. Community Health Services,* 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984) (holding that it is much harder to estop the government than other litigants, but leaving open the question of if there are no circumstances in which the government could be estopped). Case law does not support plaintiffs' arguments.

The Tenth Circuit "invokes the doctrine of estoppel against the government with great reluctance." *United States v. Browning,* 630 F.2d 694, 702 (10th Cir. 1980); *Emery Mining Corp. v. Secretary of Labor,* 744 F.2d 1411, 1416 (10th Cir. 1984). When estoppel is asserted against the government, "the only circumstances justifying use of the doctrine are those which add up to the conclusion that it does not interfere with underlying government policies or unduly undermine the correct enforcement of a particular law or regulation." *Browning,* 630 F.2d at 702; *see also United States v. Wingfield,* 822 F.2d 1466, 1476 (10th Cir.1987). Furthermore, in order to assert an estoppel claim, a party "must have relied on its adversary's conduct 'in such a manner as to change his position for the worse' and that reliance must have been reasonable in that the party claiming estoppel did not know nor should it have known that its adversary's conduct was misleading." *Heckler,* 467 U.S. at 59, 104 S.Ct. 2218 (citations omitted). To the extent that plaintiffs relied on defense counsel's representations, if at all, the court does not find that such reliance was reasonable or detrimental.

Plaintiffs' alleged reliance upon the defense attorney's misrepresentations was unreasonable because, as a general rule, "those who deal with the Government are expected to know the law and may not rely on the conduct of government agents contrary to law." *Heckler,* 467 U.S. at 63, 104 S.Ct. 2218. Applying this rule, the Tenth Circuit has ruled that a government official has no authority to waive an act's requirements and "bind the government to what amounts to an amendment to statutory language." *Emery Mining Corp.,* 744

**7.** The parties dispute the content and extent of the parties' discussions regarding this issue. However, the court does not find this factual dispute material. It need not be resolved for the court to properly rule on the issue of estoppel because the court would reach the same decision irrespective of which version of events were more accurate.

F.2d at 1416. The Tenth Circuit has further stated that "it is fundamental that the United States is not estopped by representations made by an agent without authority to bind the government in a transaction." *Browning*, 630 F.2d at 702. In *Browning*, the court found that "[t]he statements made by [the government agent] were incorrect. Under settled law, however, incorrect statements made by a government official may not serve as a basis for holding the government estopped from enforcing its regulations even if the misinformation had led to [the plaintiff's] subsequent conduct." *Id.* at 703. Reliance on defense counsel's representations was thus unjustified because plaintiffs were deemed to know that, as discussed in Section III.A, subject matter jurisdiction can never be waived. Despite defense counsel's representations, he had no authority to circumvent I.R.C. §§ 7422(a) and 6511(a), which proscribe a time bar on the filing of tax refund claims.

Moreover, plaintiffs' acts of reliance do not involve the type of detriment necessary for estoppel to be asserted against the government. As in *Heckler*, this is not a case in which plaintiffs have "lost any legal right, either vested or contingent, or suffered any adverse change in [their] position." *Heckler*, 467 U.S. at 61–62, 104 S.Ct. 2218. Plaintiffs did not, for example, fail to file a timely claim for refund because the defendant told them that they did not need to do so. The statute of limitations bar was present both before and after defense counsel's misrepresentations because plaintiffs failed to file a timely claim for refund. Thus, it is not plaintiffs' alleged reliance upon defense counsel that may cause plaintiffs to lose an overpayment refund for tax years 1990 and 1993. If plaintiffs acted in reliance at all, it was by incurring additional litigation fees, such as the fees paid to plaintiffs' accountants for the computation of refunds owed.

■ Plaintiffs' lack of reasonable or detrimental reliance, as well as consideration of the Tenth Circuit's reluctance to invoke the doctrine of estoppel against the government, leads the court to find plaintiffs' estoppel argument without merit. If the court were to allow plaintiffs to succeed on their estoppel claim, the court would "unduly undermine the correct enforcement of a particular law or regulation." *Browning*, 630 F.2d at 702. The court refuses to do so.[8]

*3. Settlement*

■ Plaintiffs' third argument against application of the statute of limitations is that prior to the June 17, 1999 status conference the parties reached a settlement in which defendant agreed not assert this defense. Defendant denies that there was such an agreement, asserting that there was no give and take between the parties, but rather a unilateral statement by defendant of its legal position. The court finds this factual dispute immaterial, however, because even if the parties had reached such an agreement, the court would not be free to follow it. Subject matter jurisdiction may not be conferred upon a federal court by an agreement of the parties. *See Davis v. Gracey*, 111 F.3d 1472, 1482 (10th Cir.1997).

■ Plaintiffs rely heavily on the Tenth Circuit case of *City of Wichita, Kan. v. Southwestern Bell Telephone Co.*, 24 F.3d 1282, 1288 (10th Cir.1994), for the proposition that "an attorney is clothed with sufficient authority to bind a client for services routinely and directly connected with the representation." In *City of Wichita*, a city attorney agreed to a particular interpretation of a term in a contract which the city had entered with Southwestern Bell. The city argued that its attorney had no authority to bind it because the interpretation of the term was not

---

**8.** Plaintiffs' reliance on *Sumrall v. United States*, 1998 WL 1017305, No. 96–Z–467 (D.Colo. Feb. 6, 1998), is misplaced. In *Sumrall*, the court stayed the proceeding because a proper claim of refund was still timely. The court did not mention the doctrine of estoppel.

approved by the City Commission. The court held that the agreement was binding because "Kansas statutes ... do not limit a city attorney's ability to bind its clients to a practical interpretation of terms of a contract." *Id.* The present case is distinguishable, however, because federal statutes do limit the defense attorney's ability to bind its "client" to an agreement waiving subject matter jurisdiction. Quite simply, a court's lack of subject matter jurisdiction cannot be waived by the actions of any attorney. Accordingly, the court finds that even if a settlement was reached, it was invalid and cannot be relied on by plaintiffs. Plaintiffs' request that an evidentiary hearing be held to determine the extent of defense counsel's authority is denied.[9]

Although the court disagrees with each of plaintiffs' arguments and finds that lack of subject matter jurisdiction is an issue which the court should rightly consider, this does not preclude the court from granting relief to plaintiffs under either the doctrine of equitable recoupment or under mitigation statutes.

## C. Equitable Recoupment

Plaintiffs' next argument is that the doctrine of equitable recoupment protects plaintiffs' refund claims from jurisdictional challenge. Defendant responds that the equitable recoupment doctrine has been substantially narrowed such that it does not apply to the facts in this case. As discussed below, the court finds that recoupment entitles plaintiffs to a refund for tax paid on the interest earned from the Fogelman "loan," but not for a refund related to the reallocation of net operating losses from Mr. Fogelman to Mr. Kauffman.

The seminal Supreme Court case developing the doctrine of equitable recoupment is *Bull v. United States*, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935). In *Bull*, the decedent, a member of a partnership, died in February of 1920. His executor included the decedent's share of partnership profits for 1920 in an estate tax return. The executor did not include the same amount in the decedent's 1920 income tax return. In July, 1925, the IRS determined that the decedent's partnership interest should have been characterized as income and assessed an income tax deficiency against the estate. The executor paid the deficiency and, in 1928, sued for a refund of the income tax paid on the partnership interest, or, in the alternative, for a refund of the estate tax paid on the same interest. At the filing of the executor's claim, the statute of limitations for

---

9. The court further notes that even if the statute of limitations was a defense which could be waived in this case, plaintiffs' argument that a binding agreement was reached by the parties would fail. The exclusive procedures for compromising federal tax liabilities are proscribed in sections 7121 and 7122 of the IRC. *See Uinta Livestock Corp. v. United States*, 355 F.2d 761, 765 (10th Cir.1966); *Botany Worsted Mills v. United States*, 278 U.S. 282, 288–89, 49 S.Ct. 129, 73 L.Ed. 379 (1929). Under these sections, a settlement must be in writing and must be approved by the Secretary, the Attorney General, or the Attorney General's delegate. The Tenth Circuit case of *United States v. Wingfield*, 822 F.2d 1466 (10th Cir.1987) is instructive here. The *Wingfield* court addressed the status of a federal tax lien on property of the plaintiff seized and forfeited pursuant to a Colorado statute. The county of Boulder argued that the Government should be kept from asserting its right to the property because of assur-

ances from IRS attorneys that the government would waive its claim. *Id.* at 1475. The Tenth Circuit, citing I.R.C. § 7122(a) and 26 C.F.R. § 301.7122, stated, "Even assuming, arguendo, that IRS attorneys represented that the IRS would waive any claim to the seized property, the IRS attorneys were not shown to have authority to compromise or waive a claim of the United States in these circumstances.... Moreover, compromises are required to be in writing ... Boulder County relies exclusively on alleged oral assurances by IRS attorneys." *Id.* at 1476 n. 8. Similarly, the alleged settlement in the present case did not comply with either section 7122 or its accompanying regulations. First, the agreement was not in writing, as required by 26 C.F.R. § 301.7122. Second, defendant presents the affidavit of the Attorney General's delegate, the Chief of the Office of Review, asserting that he did not authorize a compromise or concession of plaintiff's claim, as required by I.R.C. § 7122(a).

seeking a refund of the amount paid in estate tax had expired.

The Court affirmed the lower court's determination that the partnership profits were properly included as income, *see id.* at 259, 55 S.Ct. 695, but also recognized that the government had used inconsistent theories to obtain more money than it was fairly entitled to, *see id.* at 260–61, 55 S.Ct. 695. The Court then ruled that equitable recoupment allowed the executor to credit against the deficiency of income tax the amount of overpayment of estate tax, despite the fact that a refund of the estate tax paid was time barred. *See id.* at 263, 55 S.Ct. 695. The Court explained: "[R]ecoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiffs action is grounded. Such a defense is never barred by the statute of limitations so long as the main action itself is timely." *Id.* at 262, 55 S.Ct. 695.

■ With respect to the "interest" issue, the facts of the instant case are very similar to those in *Bull.* First, as in *Bull,* a single transaction—the purported loan from the Royals to Mr. Fogelman—was involved. Second, the transaction resulted in plaintiffs being taxed twice under two inconsistent theories: 1) in treating the transaction as a loan, plaintiffs included the "interest" from the loan as income on their 1990 tax return; and 2) in the court treating the transaction as a redemption, plaintiffs are taxed on the $34 million, which they previously had deducted. If the deduction is disallowed, it is because there was no loan and, under plaintiffs' alternative theory, that leads to the conclusion that there was also no interest on the loan on which they should have been taxed. If the defendant is entitled to enjoy tax treatment on the basis of a redemption, then plaintiffs should receive, in essence, credit for the tax they already paid on their inconsistent—and incorrect—characterization of the transaction as a loan. Under the mandate of the Supreme Court, the court thus finds that recoupment entitles plaintiffs to a refund for tax paid on

the "interest" earned from the Fogelman "loan."

■ The court does not find, however, that similar reasoning applies to allow the reallocation of losses from Mr. Fogelman to Mr. Kauffman. There were actual operating losses which arose not because of the characterization of the transaction but from conducting the business. The parties to the contract agreed to allow Mr. Fogelman to claim 50% of the deductions related to those net operating losses, which he did until January 3, 1991. The IRS had no part in this allocation agreement between private parties and has not asserted a deficiency against Mr. Fogelman related to the deductions. Preserving that allocation is not inconsistent with treating the transaction as a redemption. Rather, the parties allowing Mr. Fogelman to take the deductions is properly viewed either as part of the consideration for the sale of Mr. Fogelman's Royals stock or as a reflection of the parties' intentions concerning who would enjoy certain fruits of ownership until the date on which the sale would "close."

Defendant asserts that *Bull* has been substantially narrowed by the later Supreme Court decisions of *Rothensies v. Electric Storage Battery Co.,* 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296 (1946) and *United States v. Dalm,* 494 U.S. 596, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990). Even assuming that defendant is correct, the court finds the facts concerning the purported interest in the present case very similar to those in *Bull* and distinguishable from those in *Rothensies* and *Dalm.* In *Rothensies,* the Court declined to follow *Bull* because more than one transaction was involved. *Rothensies,* 329 U.S. at 303, 67 S.Ct. 271. The taxpayer in *Rothensies* paid excise tax on the sale of batteries from April 1919 to April 1926. Later, the taxpayer claimed that the sales were not subject to tax and sought a refund for the years 1922 through 1926. The IRS agreed to the refund in 1935. However, because the taxpayer had deducted the excise tax

from income before it calculated its income tax, the IRS treated the refund as income for 1935. The taxpayer paid the deficiency and then sought a refund. In the refund suit, the taxpayer asserted that if the refund was income, it should be permitted to recoup the amount of the time-barred excise taxes which it had paid between 1919 and 1922. The Court refused to extend *Bull* to cases involving many separate transactions over a number of years. *See id. Rothensies* does not govern the present case in which only one transaction was involved.

Similarly, *Dalm* does not remove this case from the reach of the recoupment doctrine. In *Dalm*, the plaintiff received money from her employer which she characterized as a gift and on which she paid gift tax. *Dalm*, 494 U.S. at 599, 110 S.Ct. 1361. Subsequently, the IRS determined that the money should have been characterized as income and asserted a deficiency against the plaintiff. The plaintiff sought a redetermination that only the gift tax applied. The plaintiff eventually settled with the IRS and paid income tax on the money. The Court noted that the plaintiff did not make a claim for recoupment for gift tax paid in the original tax court proceeding. Immediately after the settlement, the plaintiff filed a claim for refund of the gift tax paid. The Court held that although a single transaction was involved and taxed under inconsistent theories as in *Bull*, it had no jurisdiction because a claim for recoupment cannot itself give the court jurisdiction. *Id.* at 610–11, 110 S.Ct. 1361. Rather, the court must already have jurisdiction over the deficiency suit before recoupment can be asserted as a means to allow the court to view the effects of the entire transaction. *Id.* In this case, it is undisputed that the court has jurisdiction over plaintiffs' claim seeking a refund of taxes paid when the government asserted a deficiency based on plaintiffs' 1991 bad debt deduction. The court therefore correctly examined the entire Fogelman transaction and determined that plaintiffs were taxed twice on the income from the transaction under inconsistent theories.

### D. Mitigation

Plaintiffs' final argument is that, despite the expiration of the statute of limitations, the mitigation statutes found in sections 1311 through 1314 of the IRC entitle them to refunds for the 1990 and 1993 tax years. The mitigation statutes apply in limited instances to allow adjustment to a closed tax year where, in determining a tax for another year, it is found that an item in the closed year was treated erroneously. Defendant argues that an essential element of mitigation is not present in this case, thus preventing plaintiffs' recovery. The court concurs with defendant and finds that plaintiffs may not recover under the mitigation statutes.

A taxpayer invoking the mitigation statutes bears the burden of proving that the specific requirements of the statutes are met. *See Longiotti v. United States*, 819 F.2d 65, 68 (4th Cir.1987). Plaintiffs must meet three requirements for the mitigation provisions to apply:

(1) there must have been a "determination" as defined in 26 U.S.C. § 1313(a)(1)–(4);

(2) on the date of the determination correction of the effect of the error must be barred by a rule of law (such as the statute of limitations), as mandated by 26 U.S.C. § 1311(a); and

(3) the determination must fall within one of the "circumstances of adjustment" described in 26 U.S.C. § 1312(1)–(7).

That the first two requirements exist is not in dispute; the court's June 10, 1999 order qualifies as a "determination" under section 1313(a)(1), and, as discussed in Section III.A, plaintiffs' ability to correct any alleged error to their 1990 or 1993 tax returns by the filing of a refund claim is time barred. Plaintiffs, however, have failed to show the existence of the third requirement.

■ Plaintiffs incorrectly allege that two circumstances of adjustment are present here. First, plaintiffs rely on IRC § 1312(1), which states: "Double inclusion of an item of gross income. The determination requires the inclusion in gross income of an item which was erroneously included in the gross income of the taxpayer for another taxable year...." The plain language of the statute makes it clear that section 1312(1) does not apply to this case. By its terms, section 1312(1) is only applicable if the court's determination required plaintiffs to include an item in gross income. In its June 10, 1999 order, the court simply concluded that plaintiffs were not entitled to a bad debt deduction arising from the Fogelman transaction. The Tenth Circuit has held that the disallowance of a deduction does not fall within the scope of an item of gross income. *See Gardiner v. United States*, 536 F.2d 903, 906 (1976). "The meaning of an item of gross income is, under Section 61 of the 1954 Code, limited to specific items and does not include everything that results in an increase in tax. It is restricted to positive items and does not include negative elements such as deductions ... the omission of which results in increased taxes." *Id.* Because the court's disallowance of plaintiffs' bad debt deduction cannot be characterized as an item of gross income, the court finds section 1312(1) inapplicable.[10]

■ Likewise, plaintiffs' assertion of the presence of an IRC § 1312(4) circumstance also fails. Section 1312(4) provides: "Double disallowance of a deduction or credit.—The determination disallows a deduction or credit which should have been allowed to, but was not allowed to, the taxpayer for another taxable year...."

The Tenth Circuit has stated that this section "covers the situation in which a taxpayer claims a deduction which is ultimately disallowed on the ground that it should have been claimed in a different year." *J.B.N. Telephone Co., Inc. v. United States*, 638 F.2d 227, 235 (10th Cir. 1981). Such a situation does not exist in this case. First, the court's June 10, 1999 order did not disallow plaintiffs' 1991 bad debt deduction on the ground that it should have been claimed in a different year. Rather, the court determined that a bad debt deduction arising from the Fogelman transaction could not be taken in any year. *Cf. Qureshi v. United States I.R.S.*, 75 F.3d 494, 498 (9th Cir.1996) ("[T]he taxpayer has made no showing of the type of circumstances that § 1312(4) was designed to relieve: He has failed to show ... that any of his disallowed deductions should have been allowed for another tax year"). Second, the court's June order did not disallow the deductions which plaintiffs now seek. The court's determination did not address the appropriate tax treatment of the interest earned by the Royals from the Fogelman transaction, nor did it address the reallocation of net operating losses from Mr. Fogelman to Mr. Kauffman. Thus, the claims remaining in this case are not deductions that a determination has "disallowed."[11] As plaintiffs have failed to establish the existence of the third element necessary for mitigation, the court finds that the mitigation statutes cannot carry plaintiffs over the statute of limitations bar raised by defendant.

## IV. Disposition of the Case

As discussed above, the court finds that plaintiffs are barred by the statute of limi-

---

10. For a plaintiff to successfully assert a section 1312(1) circumstance of adjustment, the plaintiff must also demonstrate that an inconsistent position was maintained by the party against whom the mitigation will operate. 26 U.S.C. § 1311(b)(1). Since the court has determined that the facts in this case do not give rise to a section 1312(1) circumstance, the court need not address this additional requirement.

11. For a plaintiff to successfully assert a section 1312(4) circumstance of adjustment, the plaintiff must also demonstrate that correction of the error was not barred at the time the party for whom mitigation will operate first maintained its position. 26 U.S.C. § 1311(b)(2). Since the court has determined that the facts in this case do not give rise to a section 1312(4) circumstance, the court need not address this additional requirement.

 

tations from asserting the theories of recovery remaining in this case. The court also finds, however, that the doctrine of equitable recoupment allows plaintiffs to circumvent the statute of limitations as it applies to the double taxation which would result by virtue of their having paid tax on the "interest" arising from the Fogelman transaction. On the other hand, nothing allows plaintiffs to circumvent the statute of limitations as it applies to the reallocation of net operating losses from Mr. Fogelman to Mr. Kauffman. The court has no jurisdiction to determine this issue. Therefore, the court grants summary judgment sua sponte to defendant as to the reallocation of the net operating losses. The court also grants plaintiffs summary judgment on the issue of entitlement to a refund based on tax paid in 1990 on the "interest" income. The court retains under advisement plaintiffs' motion for summary judgment, however, as to the amount of the refund due because the court is unable to determine whether material facts remain in dispute on this point. If no question of material fact exists as to the amount of refund owed plaintiffs in light of this order, then summary judgment should be entered for plaintiffs for the undisputed amount. Alternatively, if a question as to the appropriate amount remains, then the court must resolve this issue with the parties. In order to clarify the status of plaintiffs' refund amount, the court will hold a telephone conference with the parties on November 24, 1999 at 1:30 p.m. The court further retains under advisement defendants' motions to strike until said telephone conference.

**IT IS ACCORDINGLY ORDERED** that, on the issue of the reallocation of net operating losses, plaintiffs' motion for summary judgment (Doc. 135) is denied and summary judgment is granted in favor of defendant

**IT IS FURTHER ORDERED** that, on the issue of the recognition of interest income, plaintiffs' motion for summary judgment (Doc. 135) is granted in part and retained under advisement in part.

**IT IS FURTHER ORDERED** that defendant's motions to strike (Docs 139 & 146) are retained under advisement.

**IT IS SO ORDERED.**